GLADNEY, Judge.
This is a suit to recover workmen’s compensation allegedly due to disability resulting from an employment accident on August 17, 1951, when the employee, Herman Freeman, w>as seriously injured by an axe blade which cut his right knee.
When the case -came on for trial in the lower court, it was stipulated by the parties the only issues involved were the nature and extent of plaintiff’s disability and the rate of compensation to be paid. Judgment was in favor of Freeman against the defendants, the Builders’ Service, Inc. and- World Insurance Company, condemning them to pay compensation from August 17, 1951 at the rate of twenty-five per cent of $30 per week, during the period of disability, not to exceed 300 weeks. Medical expenses in the sum of $435 were also awarded. On,June 26, 1952, the same day on which the judgment was .signed, defendants applied for and were granted orders of suspensive and devolutive appeal returnable to this court. Four days, later counsel for plaintiff filed a motion for “rehearing or new trial”. This motion was not acted upon and was the basis of a motion to remand filed in this court. Upon submission of the case to us the motion to remand was expressly abandoned and has passed out of the picture. Plaintiff in his brief has requested the judgment be'amended by increasing the compensation award to $30 per' week for a period not to .exceed 300 weeks. It is not sufficient for one who has not appealed' to ask for a change in the judgment by merely demanding it in his brief. The change must be asked for by the appellee in a regular answer to the appeal. Code P'rac. art. 888; State v. Becker, 1878, 30 La.Ann. 682; Hughes v. Gill, La.App.1949, 41 So.2d 536, 539.
Plaintiff at the time of the injury was thirty-two years old. He was employed on August 17, 1951, as a, woodcutter and he and his helper were engaged in cutting wood for which they were each paid 10# per stick. -His wages were sufficient to permit the maximum compensation rate, that is, $30 per week, if found due under the act.
Immediately after the accident the employee was placed under the -care of Dr. R. S. Roy who described his injury as a deep laceration on the right knee, a transverse of the right knee just below the’knee cap. The patella tendon was severed and the cut went into the joint between the two bones causing damage to the capsule of the joint. No bone involvement was indicated. Dr. Roy did a closure of the capsule and sutured the patella tendon and cutaneous tissue. The operative process was likened to a reconstruction of the knee covering. Freeman remained in the Natchitoches Hospital nine days and thereafter Dr. Roy continued to treat him until September 19, *894 1951. During this period of treatment the knee joint swelled and on a number of occasions required the use of an aspirator to withdraw the fluid which, accumulated.
Freeman continued to suffer so much from the injury that on September 19th he was admitted to the Veterans’ Administration Hospital at Pineville, Louisiana, where he remained until his discharge therefrom on September 27th. The testimony of the Veterans’ Administration Hospital doctors was not taken but we find a narrative summary of the case incorporated in the record by agreement of counsel. The pertinent part of this report gives the following findings as to the knee :
“There was a healed, Y-shaped laceration, which had been sutured and was located anteriorly over the patella. This appeared to be well healed. The patella appeared to ballotte on the underlying fluid and there was fluctuation beneath the patella both laterally and superiorly. The joint appeared to be swollen and motion yielded some pain. No deformity was otherwise noted. No fragmentation of the patella was evident. The right leg from the knee down appeared cold and clammy. Arterial pulsations were bi-laterally normal. The knee joint itself appeared hotter than the left. Some tenderness in the right femoral region was palpable; lymph nodes were present. Neurological examination was negative. Skin and lymphatics showed nothing remarkable except for the palpable and tender lymph node in the right femoral region.
* * * * * *
“X-ray of the right knee showed soft tissue swelling without evidence of fracture.
“Patient was seen by the Chief of the Orthopedic Service who concurred in a diagnosis of subacute synovitis of the right knee and recommended rest and physiotherapy. This was applied and patient was also placed on penicillin. The swelling subsided rather rapidly and the patient was able to move the knee and become somewhat ambulatory.
******
“Final diagnoses: 1. Arthritis of right knee due to contusion — Trtd. Improvd.”
After returning to Natchitoches from the Veterans’ Administration Hospital, Freeman was treated by Dr. Roy until November 19, 1951, on which date he was discharged by the doctor as being able to resume his occupation. Dr. Roy was of the opinion the knee had normally healed and Freeman could resume his occupation without discomfort. He testified that Freeman had one hundred per cent motion in his knee; that he could walk without a limp, could bend, squat and do anything he had ever done; that there was minor atrophy to the calf of the right leg due to disuse. Also he stated there was some numbness just below the knee, but that this was of no particular importance. He found no indication of bursitis. During the trial Dr. Roy was asked by the court if plaintiff could be suffering from tenderness in the knee scar and if he struck the ground constantly with the knee would there be difficulty from its contact with the ground. The witness denied that there would be any more tenderness in the knee scar than there would be from a scar following an appendectomy, but that possibly a constant use of the knee and resting thereon would cause a disturbance. Parenthetically, the purpose of the court’s question is obvious. The occupation of Freeman required more or less constant sawing of logs lying upon the ground which, in turn, required the employee to rest one knee upon the ground while so engaged.
During the interrogation of A. Marbry Jones, president of the Builders’ Service, Inc., the employer of Freeman, it was disclosed that when Freeman was discharged as able to return to work Jones was advised by Dr. Roy to give him light work. He quoted Dr. Roy as saying the employee’s leg was well as far as he could ascertain, but that Freeman would have a little pain regardless of whether or not he worked, and that when the pain should subside he could assume his regular work. Plaintiff refused to accept the light work and advised Jones that he did not feel able to re *895 turn to work. Compensation payments were discontinued as of November 17th.
On December 9, 1951, plaintiff instituted this suit. After this date plaintiff was examined by Dr. Daniel M. Kingsley on January 8, 1952, and four days later, January 12th, by Dr. R. Bruce Wallace, Jr. Both of these doctors practice in Alexandria, Louisiana. Dr. Kingsley’s practice is confined largely to orthopedic surgery. Their examinations were for the purpose of evaluating plaintiff’s disability.
Dr. Kingsley’s findings may be thus summarized: Freeman complained to him of pain and stiffness of the right knee, especially over the medial aspect. He complained that his knee would not bend all the way and there was pain over the scar from his injury. He told the doctor his knee “gave way” two or three times a day and the pain was so intense as to require his walking with a cane. Examination revealed the knee itself was negative in all respects; that is to say, there was no swelling, there was a complete range of motion, and the ligaments did not show any abnormalities. Dr. Kingsley observed Freeman could get upon his toes and walk normally, and could squat and hop on each leg individually. There was some atrophy of the right thigh and a trace of increased crepitus, which he explained to be increased rubbing as' compared with the left knee. The patella tendon was found to have a smooth border but stood out with prominence which he interpreted as healing of the injured area in the fat pad. X-rays were negative and he saw no indication of bursitis. Dr. Kingsley estimated that at the time of his examination Freeman had approximately a three per cent disability which would decrease in time. He said that no further medical treatment was required, but that Freeman needed assurance he could use his leg and he gave his opinion that he would benefit by so doing.
Dr. Wallace made, his examination four days after Dr. Kingsley. The patient’s complaints were the same as reported by Dr. Kingsley. Upon examination Dr. Wallace noted Freeman walked with an obvious limp, favoring the right lower limb and the right knee could not be flexed more than ninety degrees without a complaint of pain. He considered the scar over the knee cap well healed. The patient was unable to distinguish between sharp and dull sensations medially while laterally the sensations were normal. The doctor testified that as Freeman had received a severe trauma to the knee and the superficial nerves severed anteriorly, he felt that complete recuperation had not been attained and that there would be some improvement in time. He indicated the necessity of further treatment. He saw no suggestion of bursitis.
Following these examinations and prior to trial on April 3, 1952, plaintiff was examined by Dr. W. H. Pierson of Natchi-toches. He testified plaintiff was suffering from a disability described as a pre-patella bursitis, traumatic in origin, and that as a result the knee had become stiffened by trauma and swelling with' a tendency to give whenever the knee was bent. While on the witness stand the doctor was called upon to examine plaintiff’s knee in the presence of the court. During this examination he pointed out to the court a swollen condition of the knee which he explained as being caused by a mass in the knee of the size of a silver dollar. He said there was evidence of fluid in the scar. He noted a definite limitation upon the bending of the knee. His opinion then was that the knee was not healed and that plaintiff could not fully perform his occupation but predicted the injury would be completely well in from four to ten weeks.
Drs. Roy and Pierson testified on April 3, 1952 and Drs. Kingsley and Wallace gave their evidence on April 9, 1952. Drs. King-sley and Wallace testified that there was no indication of bursitis at the time of their respective examinations but that it was possible for bursitis to have developed prior to trial.
In addition to the medical testimony plaintiff presented further evidence of disability in the testimony of friends and neighbors and the testimony of his wife. These uniformly testified plaintiff worked regularly prior to the instant accident, that he had performed no work since his in *896 jury, and had exhibited pain and disability up to the date of trial. We have every reason to regard a9 credible this evidence and we have no reason to suspect plaintiff of being a malingerer. Indeed, there is nothing in the record to'warrant such a suspicion.
In appraising the medical evidence it must be noted that when plaintiff was discharged for duty by Dr. Roy, the employer was -instructed to give him ■ light work. This is evidence at least that plaintiff on that date was not'fully capable of returning to his job. Dr. Kingsley, on January 8, 1952, estimated plaintiff’s disability as being of a minor nature, that is, three per cent. However, Dr. Wallace was of a different opinion and recommended that plaintiff be given further treatment- before being returned to work. None of defendants’ medical witnesses examined plaintiff after Dr. Pierson determined Freeman was suffering from bursitis.
The judge a quo, after observing plaintiff’s knee being examined by Dr. Pierson, and after' having- considered all the evidence, both medical and lay testimony, decided plaintiff was suffering from partial disability of a temporary character.-
The issue is chiefly as to the extent and nature of the disability requiring factual findings from conflicting evidence. In such instances as this we are obliged to rely strongly upon the decision, of the trial judge who actually saw and observed the demean- or of the witness who testified before him, and who also personally witnessed a medical examination of plaintiff’s knee.
It is well settled that where only factual issues in a compensation case are involved on appeal the appellate court will not disturb findings of'fact by the district court, unless they are manifestly erroneous. Chelette v. Russell, La.App.1952, 59 So.2d 210, 211.
We approve of the resolution of this case .by the judge a quo, and for the reasons above stated, the judgment appealed from is affirmed at appellant’s costs.