On or about January 15, 1939, the parties to this suit entered into a written contract under which the plaintiff agreed to furnish all labor and material necessary to re-roof a certain dwelling belonging to the defendant on Madison Street in the City of Lake Charles over the roof which then existed, and to perform and complete the work in a workman-like manner within a reasonable time for the sum of $270, cash. The contract was in the form of a proposal by letter addressed to the plaintiff who conducted his business under the style Standard Siding Roofing Company signed by the defendant and duly accepted by the plaintiff. The obligation undertaken by the latter, following the words of the contract, was that he "will re-roof over present roof using Bird's Copper Clipt Dura-Green Material. Replace all valleys with new valley metal and apply our Boston type ridge roll."
Plaintiff proceeded at once with the work contemplated under the contract and completed the job about January 28, 1939. Upon completion he gave the defendant a written form of guarantee as to the material used by him and also that he would maintain the roof and flashings in a water tight condition, or stop any leaks that may develop in the roof on account of defective material or labor, upon receiving written registered notice, for a period of ten years. *Page 650 
Presumably the defendant was a bit slow in paying or offering to pay the plaintiff. We infer that it may have been because some leaks developed in certain parts of the roof and also because of poor workmanship at one spot over a hole where a chimney formerly protruded through the roof. Plaintiff was called to remedy these defects and performed some work which continued as late as the month of March, 1939. On May 18, 1939, he had not yet been paid and in order to protect the laborer and materialman's lien which he was of the opinion the law accorded him on the building and lot on which it was situated he filed and had recorded a lien in the mortgage records in the Parish of Calcasieu. As payment was still delayed plaintiff found it necessary to employ an attorney who evidently endeavored either to compromise or adjust the claim in some manner but as his efforts proved ineffective this suit was filed on December 21, 1939.
In his petition plaintiff sets out the contract and his compliance with its terms, avers that the work was done in a thorough and workman-like manner and accepted by the defendant after it had been completed. He alleges that he made several unavailable demands for payment whereupon he filed the necessary lien in order to protect his claim. In addition to the price of the contract he claims five per cent interest from the date of the completion of the work and fifteen per cent of the amount of both principal and interest as attorney's fees. He also prays for enforcement of the lien he claims on the building and lot.
In his answer the defendant relies upon the defense of the utter failure on the part of the plaintiff to comply with the terms of the contract; that the work was performed in a most unworkman-like manner and that the roof has leaked from the day it was applied and although plaintiff was called upon repeatedly to do so, he has always refused to comply with the terms of the contract. For these reasons defendant contended that he owed plaintiff nothing whatever.
The case was tried on these issues and after testimony was closed defendant's counsel evidently concluded that under the testimony adduced there had been a substantial compliance with the terms of the contract and even though there were still defects because all the work had not been performed according to specifications, defendant's relief was limited to a reduction in the price of contract to such an amount as is necessary to have the work done according to specifications. He accordingly filed a motion to re-open the case in order to introduce testimony to show what it would cost to repair the roof so as to bring it up to contract specifications. The motion was granted and both plaintiff and defendant were permitted to produce proof to that effect. A witness for the defendant testified that it would cost $242.50 to properly apply the roof and one for the plaintiff, testified that all that was necessary to remedy the condition was to replace the flashings where the flat part of the roof over the kitchen joined the main roof of the house and that would cost approximately $10.
The trial judge after hearing the testimony of these two witnesses concluded that a fair cost to put the roof in proper condition would be $240. He accordingly rendered judgment in favor of the plaintiff for the difference between this amount and the contract price of $270, that is the sum of $30, together with all costs. He rejected the plaintiff's demand for attorney's fees. From that judgment plaintiff took this appeal.
[1, 2] We believe that the trial judge was correct in re-opening the case for the purpose requested, as under the jurisprudence in the more recent cases the law seems to be that a contractor is entitled to recover for work performed by him and which has enured to the benefit of the owner even though the work is shown to have been defective in some respects, when it is shown that a price has been agreed upon between them. In such a case as held in Peterson v. Peralta, 3 La. App. 516, "The remedy of the owner is a reduction [of the price] to an amount necessary to perfect or complete the work according to contract." This statement of the law is cited with approval in the case of Reimann Construction Co., Inc., v. Upton, La. App., 178 So. 528.
The evidence in the present case with regard to the condition of the roof after it had been applied, is conflicting. We do believe however that it shows a rather substantial compliance by the plaintiff with the terms of his contract which, after all, was for re-roofing the house over an old roof. *Page 651 
[3] There was only one part of the roof where undoubtedly the work was not properly done. This was admitted by the plaintiff and it was afterwards corrected. We have reference to a hole in that part of the roof at the place where there formerly was a chimney. Instead of covering the hole with a wooden board plaintiff's man on the job used a piece of cardboard and re-roofed over that. As we have said, however, that was corrected, and, as we view the testimony, the roof thereafter was not really as bad as the defendant would have the court believe. As a matter of fact one of his own witnesses, a tenant who occupied one side of the house, testified that the only leaks she ever saw were in the kitchen, over the sink and around the cabinet on the side of the house which she occupied, and also in the kitchen around the stove, on that side of the house occupied by the defendant. It is shown that that part of the house was under a flat roof adjoining the roof on the main part of the house and the testimony leaves us with the impression that the leaks occurred because of the defective manner in which the plaintiff had put the flashing where both roofs joined. In trying to correct this defect, instead of using a metal flashing as called for in the contract, he used some plastic composition which cracked and did not hold properly. That defect still remains in the roof and it is the only defect, according to the testimony of plaintiff's witness who testified after the case had been re-opened. The estimate of this witness that it would cost $10 to correct it appears to us however to be too small. On the other hand the estimate of $242.50 given by defendant's witness contemplates taking off the roof and reapplying it. We believe it would be unfair to the plaintiff to hold him to such an obligation considering that this roof had been on the building more than six years at the time this witness made his estimate. It is impossible for us to reconcile both these estimates and render what we think would be a proper judgment in the case. There is no doubt that the defendant is entitled to some remedy as it is shown that there are leaks in the house but at the same time we cannot agree that he is entitled to have what would amount to practically a new roof put on at the expense of the plaintiff who, as we find, had substantially complied with the terms of his contract.
[4] For these reasons we have concluded to remand the case to the lower court for the purpose of having further testimony adduced to show what it would cost to make such repairs as are necessary in those parts of the roof where it is definitely shown that there are leaks presently existing in the house to the end that judgment in accordance with what is the difference between what that amount would be, and the amount of the contract price agreed upon, may be rendered.
For the reasons stated it is ordered that the judgment appealed from be and the same is hereby set aside and reversed and it is now ordered that this case be remanded to the district court for further proceedings to be had in accordance with the views expressed herein.
All costs to abide the final determination of the suit.