The plaintiff, Herbert A. Matranga, doing business under the trade name of Home Services, brought this suit against the defendant, Richard L. Marvin, claiming the sum of $224.02, alleged to be due by virtue of repairs made to defendant's residence, No. 1535 Octavia Street, under a written contract dated October 26, 1947.
The defendant filed an answer admitting execution of the contract and denying that he was indebted to the plaintiff in any sum whatsoever. He reconvened claiming $299.99, alleging that this amount was expended by him in correcting plaintiff's defective and faulty work and for damages to the property in question, and for illness, discomfort, humiliation and trouble suffered by him and his wife.
There was judgment below in plaintiff's favor in the sum of $224.02, and dismissing defendant's reconventional demand. Defendant has appealed.
The record reflects that on October 22, 1947, plaintiff wrote the defendant's wife the following:
"Herewith submitted is our estimate for repair work to be done at your home as follows:
"Rebuilding with all new materials steps to rear porch, replacing approximately 30 sq. ft. of gallery flooring on rear porch, raising rear quarters and replacing foundation. Labor and material .................... $120.02 w.o. #932
"Removing 7' chimney, capping and cementing, cementing all loose tiles, cleaning gutters and soldering five seams and guaranteeing all repair work six months ............................ 68.00 w.o. #933
"Installing ten shelves in various places and one rod. Labor 
material .............................. 36.00 w.o. #934" *Page 414 
On October 26th, 1947, defendant signed this same letter "O. K. Richard Marvin."
Thus we have a contract composed of three separate work orders for repairs to defendant's residence. The record further indicates that there was no real dispute concerning the performance of the contract under work orders 932 and 934, should we successfully dispose of defendant's technical objections made to plaintiff's offer to introduce evidence in support of these work orders at the time of the trial.
Plaintiff in his pleadings failed to allege "performance" of the work called for under the terms of the contract. Defendant, on the other hand, denied all of the allegations of the plaintiff's petition except to admit the "execution of the contract." He reconvened for damages because of the negligent and improper removal of a chimney which was covered by work order 933.
Based on these pleadings defendant, in the lower court, objected to the introduction by plaintiff of any evidence in support of the performance of work orders 932 and 934 of the contract. Plaintiff, on the other hand, made no effort to amend his petition to plead "performance of the contract." It is defendant's contention that evidence was only admissible relative to work order 933 by virtue of the broadening of the pleadings by the reconventional demand of the defendant.
Plaintiff maintains that if his petition is defective due to his neglect to allege "performance of the contract" that the defendant has cured this defect by his answer in which he admitted the "execution of the contract." Defendant argues that the phrase "execution of the contract," "means nothing more or less than the signing and bringing into being of the contract itself, and has nothing to do with the performance of the work under the contract." We cannot agree with defendant that the definition of the phrase "execution of the contract" is limited to the "signing" and "bringing into being of the contract." A reference to the following authorities refutes the limitation placed on the phrase by defendant.
Bouvier's Law Dictionary defines execution as follows:
"The accomplishment of a thing; the completion of an act or instrument; the fulfillment of an undertaking. Thus, a contract is executed when the act to be done is performed; a deed is executed when it is signed, sealed, and delivered."
Black's Law Dictionary states:
"Execution. The completion, fulfillment, or perfecting of anything, or carrying it into operation and effect. The signing, sealing, and delivery of a deed. The signing and publication of a will. The performance of a contract according to its terms."
In Webster's New International Dictionary, Second Edition (unabridged — 1938) it is said:
"Execution: Act or process of executing; to perform; achievement."
It is very plain from a reading of these authorities that the words "execution of a contract" are not limited to, nor circumscribed by the definition placed upon the phrase by defendant's counsel. It may not be amiss to note in this instance, because of the elaborate alternative contentions of respective counsel, as to the ramifications of the phrase "execution of the contract," that words are intermediary between thought and things. We express ourselves not merely through words, which are only signs, but through what they signify — through things. Words per se are colorless and sometimes meaningless; but the thing that a word stands for has a meaning of its own and usually a meaning charged with associations of ideas and most often this associative meaning is the primary and important one in its use. Therefore, before passing on to what we consider a more impressive phase of the case, it is worth observing that those words, or phrases which accurately convey counsel's intentions relative to their use are preferred, because of the speed, certainty and fullness of meaning which they contain.
It is well established that the defects of a petition may be cured unwittingly and unintentionally by the defendant himself; "as where the answer filed by the defendant supplies material facts which were omitted in the petition. So it has been held that the allegations of plaintiff's petition are enlarged by the admissions contained *Page 415 
in the answer, which are to be treated as if the same facts had been offered and received without objection". 9 Tulane Law Review 39. See also State ex rel. Wogan v. The Mechanics' 
Traders' Bank, 35 La. Ann. 562 and Davis, et al. v. Lindsay Furniture Co., 14 La. App. 215, 129 So. 447.
Even if we interpret the phrase "execution of the contract" as counsel for defendant say they intended it to be interpreted, as meaning only that the agreement was entered into, we are of the opinion that the defendant, by virtue of his reconventional demand in connection with work order No. 933, sufficiently broadened the pleadings to permit plaintiff to introduce evidence in support of the performance of the contract under work orders 932 and 934. This was on contract embracing three work orders and not three separate and distinct contracts, therefore, defendant, by reconvening for damages occasioned to him by virtue of the defective work performed under work order 933, admitted the performance of a portion of this contract, entitling plaintiff to show performance of the contract generally.
Counsel for plaintiff called defendant's wife as his own witness and the following material facts were elicited from her:
"Q. Just a minute. I show you this contract, these jobs here, were they accomplished. That's work order 932 and 934. A. Yes, the gutters were not done.
"Q. The other two were done to your satisfaction. A. Yes, sir."
If we were to accept the reasoning of defendant's counsel with respect to "technicalities" and apply it with all of its implications to this case we would, in effect, be recognizing the validity of the sophistry that prevailed during the regime of "technicalities" in Louisiana, usually referred to as the Augustan age when, in the heyday of that era, pleadings were deemed to be an end in themselves rather than merely a means to an end. Apparently, a dilemma which systemized legal philosophy must face and solve is a combination of a due regard for the claims of justice and equity with a procedural system rigid enough to be workable. When we favor one system of thought as diametrically opposed to the other, it is usually with the result that, one of two things happens, either all system is abandoned, or the system becomes such a labyrinth of technicalities that the reasoning of the courts is influenced almost entirely by the desire to apply and adhere to its procedural rules and, in the final analysis, only incidentally by the merits of the cases per se.
We are, therefore, of the opinion that plaintiff should recover from defendant for the work performed under the contract relative to work orders 932 and 934.
With respect to work order 933, there is, in our opinion, a serious dispute. The record shows that plaintiff advised defendant to remove a certain chimney atop his residence, a duplex, the lower apartment being occupied by defendant, his wife and two sons, and the upper by his tenants. Plaintiff advised defendant that the chimney in question was in a very bad condition, that it was too high, being more than seven feet above the eaves of the house, that it offered wind resistance and probably would be blown down with the next high wind causing damage. He was of the opinion that it should be cut down to two feet above the eaves of the house and he informed defendant that he would then cap and cement the chimney and cement all loose tiles on the roof of the main building and garage and clean and repair the gutters of the main house and garage. He guaranteed the work for six months.
Defendant, relying upon plaintiff's representations concerning the chimney, ordered the work done by plaintiff and it was completed on October 30, 1947. Shortly thereafter, the weather became unusually cold which necessitated the use of a central heating system serving both apartments. Within a few days defendant, his family and his tenants noticed that there was a strong and unpleasant odor of fumes and soot which was infiltrating into both apartments, causing the bronchial tubes of defendant, his family and his tenants to become irritated. Upon investigation by defendant it was ascertained that in removing said chimney plaintiff had permitted one and one-half wheelbarrows of brick and debris to fall into the chimney with the *Page 416 
result that the chimney drew ineffectively. On or about November 14th, 1947, defendant was prohibited by the Fire Prevention Division of the New Orleans Fire Department from using the heating system until the chimney was cleaned and raised to its former height of more than two feet above the top roof line of the house, all in accordance with the Building Code of the City of New Orleans, Ordinance No. 15528 C.C.S., Article 3701 thereof.
It appears that plaintiff refused to rebuild the chimney unless defendant paid him additionally the sum of $70. The record shows that plaintiff's insurer paid the defendant for the removal of the debris from the heating system, but that defendant contracted with and paid another brick mason $140 to rebuild the chimney.
Defendant alleges that his family and tenants were without heat from November 5, 1947, until November 22, 1947, and that because of the bronchial irritation caused by the soot and fumes both he and his wife contracted colds and that his two sons became sick and were forced to remain home from school two or three days; that he was humiliated and disturbed in mind over the health of his family and tenants; and that the gutters and tiles were never repaired by the plaintiff. He itemizes his damages as follows:
"Expense of rebuilding chimney $140.00 Damage to boiler room 15.00 Repainting recreation room 35.00 Physical injury, illness 55.00 Discomfort, humiliation, trouble, etc. 54.99 ------- Total damages $299.99"
The record shows that plaintiff was in error in advising defendant to lower the said chimney and further that the said chimney was in a fair state of repair, having only a few loose bricks that needed recementing. It is also shown that the lowering of the chimney was in violation of the City ordinance referred to hereinabove.
Plaintiff, in his testimony, admitted that he had never gone on the roof to examine the chimney and that his observation of the chimney was made from a distance of approximately fifty feet and that he noticed only a few loose bricks. He stated, however, that a sub-contractor, whom he employed as a brick mason, one Paul Verdon, had made a thorough examination of the chimney and that it was upon his report that he advised the defendant to remove the chimney. However, the said Paul Verdon never appeared to testify on the trial of the case.
The damage for the breach of a building contract is usually the cost of repairing the defective work, but this rule is applicable where the owner derives some benefit from the defective construction. Merrill v. Harang, La. App., 198 So. 386, Sarver v. Barksdale, La. App., 24 So.2d 649. In this case, the work performed is worthless and must be completely redone, hence the defendant was required to rebuild exactly what plaintiff had induced him to tear down. Therefore, he is entitled to be made whole and to claim the expense of rebuilding the chimney.
We are of the opinion that the defendant has failed to prove his other items of damage.
For the reasons assigned the judgment appealed from insofar as the main demand is concerned is amended by reducing the amount thereof from the sum of $224.02 to $156.02.
It is further ordered that insofar as the reconventional demand is concerned, the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of defendant, plaintiff in reconvention, Richard Lapeira Marvin, and against the plaintiff, defendant in reconvention, Home Services, in the sum of $140.00 together with legal interest. Defendant in reconvention to pay the costs of this appeal.
Amended and affirmed in part.
Reversed in part. *Page 441