McBRIDE, Judge.
Plaintiff, a partnership, filed this suit seeking to recover from defendant thé bal- *188 anee due on a contract between the parties under which the plaintiff undertook to perform certain work as subcontractor on a levee construction job on which defendant was the principal contractor. The petition alleges that the contract between plaintiff and defendant was evidenced by a written instrument dated December 15, 1952; that plaintiff performed all work in accordance with the provisions of the said subcontract and is entitled to recover $2,115.97, being the difference between the contract price of $5,018.40 and $2,902.43, the amount paid on account by defendant.
Defendant alleges that the subcontract was verbally made and further alleges that the written instrument declared on by plaintiff was only a memorandum of the agreement not constituting the entire contract, and in addition to the terms mentioned therein, plaintiff agreed to complete its subcontract in fifty calendar days, subject to all of the terms and conditions of the principal contract between defendant and the Board of Levee Commissioners of the Orleans Levee District and particularly with reference to the demurrage clauses of said principal contract. Defendant then set forth that the subcontract was not completed within fifty calendar days, but, on the contrary, through the fault of plaintiff the work which plaintiff had undertaken was not finished until ninety-nine calendar days, and as a result defendant was charged de-murrage by the Board of Levee Commissioners on the principal contract at the rate of $25 per day for forty-nine days or $1,225, which amount it is entitled to charge to plaintiff. Defendant claimed by way of set-off the following items:
1. Fuel and supplies furnished for plaintiff’s use $238.35
2. Damages to power line paid for by defendant 76.76
3. Labor and materials for construction of mats used by plaintiff 313.05
4. Labor to repair slides 262.81
$890.97 Total
Defendant claimed all of the above including the demurrage totaling $2,115.97 made up the difference between the contract price and the amount paid plaintiff and-prayed for the dismissal of plaintiff’s suit.
In the alternative, defendant assumed the position of plaintiff in reconvention and claimed damages for plaintiff’s failure to timely perform its contract as follows:
Demurrage as outlined above $1,225.00-Wages of foreman kept on job for demurrage period 735.00
Social Security, etc. on foreman’s wages 75.95
$2,035.95
It itemized its claim in the alternative as follows:
Gross balance' due plaintiff on contract $2,115.97
Less items 1, 2, 3 and 4 described above 890.97
Net balance due plaintiff on contract $1,225.00
Damages due defendant by plaintiff 2,035.95
Net balance due defendant $ 810.95
The district judge after hearing the evidence rendered judgment in favor of plaintiff for the sum of $1,225 on the main demand, and also rendered judgment in favor of defendant and against plaintiff for the sum of $2,035.95, which in effect granted the defendant a net recovery of $810.95 in accordance with the alternative prayer of the reconventional demand. Plaintiff has appealed.
At the trial below plaintiff conceded the correctness of items 1, 2 and 3 and with respect to the claimed offset the items in dispute are the claim for demurrage and the labor to repair slides.
We are told a “slide” occurs when the dirt after being put in place on the levee by the dragline fails to hold its position and *189 slides off the fill. There were two slides, one at the upper end when the work was first started by plaintiff and a smaller and subsequent one at the lower end. The testimony of Theriot, an employee of plaintiff, is that these slides occurred because the earth was too wet when it was put in place. Theriot states that notwithstanding that fact, Coomer, defendant’s superintendent, instructed him to put the dirt in place so that Coomer could later put it up with a bulldozer.
In the agreement no mention whatever was made of slides and we are at a loss to know under what theory plaintiff endeavors to escape the charge made by defendant for labor to remedy them. The subcontract called for putting the mud in place, and if it fell by virtue of its wetness and not because of the fault of defendant, we fail to see how any valid defense can be made to defendant’s claim, the amount of which has been adequately proven.
The defendant before submitting a bid for the contract invited plaintiff to participate in the job by subcontracting for the placement of the earth on the levee. An inspection of the site was made by McSween, plaintiff’s representative, who also examined the plans and specifications issued by the Levee Board. McSween orally agreed with defendant’s representative, Wills, that if defendant was awarded the contract, plaintiff would undertake the placing the earth on the levee in accordance with the plans and specifications at 18^ per cubic yard, the job to be completed in fifty calendar days. This agreement was reached on November 23, 1952, and no mention seems to have been made of the subsequent placing the agreement in writing.
The oral agreement thus made between the representatives of the parties was one of the predicates upon which defendant made its bid to the Levee Board for the principal contract. A time limit for performance of fifty days was stipulated in the principal contract, defendant agreeing that if it did not complete the entire work within that time, it would be obligated to pay to the Levee Board liquidated damages in the sum of $25 for each day’s delay.
Defendant upon its bid being accepted by the Levee Board so notified plaintiff which began operations on the subcontract on December 17, 1952.
The major contention of appellant is that the rights and obligations of the respective parties flow not from the , verbal contract between McSween and Wills but from a written contract which must control in this suit. Plaintiff’s counsel point out that the written agreement is silent as to any particular period of time in which plaintiff was obligated to complete the work undertaken under its subcontract, and the argument is then made that any and all testimony received by the trial judg'e touching on the matter of a time element was inadmissible and should be disregarded.
The document which plaintiff maintains constituted the written contract is in the form of a letter dated December 15, 1952, addressed to Ross Wills, C. W. Vollmer & Co., signed by Frees & Laine, E. L. Frees, Partner, the body of which reads thus:
“This will confirm our conversation agreeing on your job, with New Orleans Levee Board.
“We agree to furnish all men, machines and material necessary to raise the levee to required cross section and elevation. We will be compensated for this at the agreed price of $.18 per cubic yard. Measurement will be determined by estimate at Levee Board. You will furnish men and materials to handle clearing, plowing, dressing, seeding and other work ‘ necessary to satisfactory completion of the work. You will have supervision of the work and will supply necessary construction stakes to control line and grade of the embankment.
“There will be no extra charges for transportation of machinery to and from job site.
“Any extra work not called for in plans and specifications will be done at *190 a unit or hourly price to be agreed upon.
“Thank you for the opportunity to work with you in the matter.”
At the foot of the letter appears the following :
“Topping of Florida Aye. Levee
Signed by (S) Ross Wills By--
Mr. Ross Wills for
For C. W. Voll- Frees & Laine
mer & Co. Contractors”
The evidence is to the effect that although the letter in question bears the date December 15, 1952, it was not submitted to defendant until the latter part of January, 1953, or long after plaintiff had started in to perform its undertaking. Wills testified that just before the letter was written Frees mentioned to him that plaintiff desired to have some record for its files as to how the quantities of mud were to be figured and the price plaintiff was to be paidj whereupon Wills told Frees to address a letter to him and that he would sign it. The letter was brought to Wills on the levee by Laine in late January and Wills signed at the foot of the document.
We do not think the letter was ever intended to serve as a contract, but on the contrary was to be what Wills testified it was, merely a memorandum for the office records of plaintiff. The job was commenced on December 17, 1952, and plaintiff only presented the letter a month later and after it was well along with its work. In other words, plaintiff had proceeded pursuant to the verbal agreement made at the job site on November 23, and the writing of the letter in late January appears to us to have been in the nature of an afterthought. We are well satisfied that the verbal agreement was complete and embraced all details of the job, otherwise the plaintiff can be said to have undertaken a substantial contract under an incomplete and preliminary agreement, which would certainly be contrary to all good business principles. Evidence showing the conditions of the verbal contract was properly received.
McSween thoroughly understood that C. W. Vollmer & Co., Inc., would submit a bid to the Levee Board for the principal contract, and that one of the conditions of such bid would be that the work would be fully completed within a limit of fifty days from the date of the contract and that the contract would contain provisions for liquidated damages or demurrage in the event of the failure of the contractor to timely complete the work contracted for. For instance, McSween testified:
“Q. * * * Isn’t it true, you and Mr. Wills specifically discussed the provision in the specification relating to bonus and demurrage? A. We discussed it, as I told you; that was part of his bidding time, yes.
“Q. That is, if the job ran over a specified particular time, the job would be charged demurrage at $25 a day ? A. Yes.
******
“Q. You knew, of course, that if the contract went over the specified time, demurrage would be charged to the contract? A. I knew, of course, that if the job went over the specified time, and there was no increased time—
“Q. Right. A. —he would pay $25.
“Q. By that, you mean if the Levee Board didn’t grant any additional time ? A. That’s right.”
Frees, one of the partners of plaintiff, also knew there could be no delay in completing the work called for by the subcontract. He testified:
“Q. Do you deny that you were bound to do that job in 50 days? A. No. I don’t deny it, but — ”
The plaintiff required ninety-nine calendar days to perform the job and the record reflects that the cause of the entire delay was the fault of plaintiff.
*191 One excuse offered by plaintiff is that defendant failed to perform certain parts of its work which had the effect of retarding plaintiff in carrying on its operations, but the record does not show this to be true, plaintiff’s employees testified that the defendant was cooperative at all times.
Plaintiff also seeks to excuse itself on the ground that the material available for the fill was of very poor quality. Whereas Mc-Sween inspected the job site beforehand and could have readily determined the nature and composition of the earth, he, an experienced contractor, should have known of any unfavorable conditions if such existed and have governed himself accordingly in connection with the confection of the subcontract.
The same thing may be said with reference to the claim that plaintiff could not work more than one shift of men each day because the employees refused to work after dark near the electric power line which ran along the site. McSween was undoubtedly cognizant of the presence of the power line and should have contemplated what the reaction of the employees would be under the circumstances.
The LSA-Civil Code provides:
“Art. 1930. The obligations of contract (contracts) extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.”
“Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.”
It is well settled that for breach of contract without fraud or bad faith only those damages which were in contemplation of the parties at the time of the making of the contract may be recovered. R.C.C. arts. 1934, 1943; Lee Lumber Co. v. Union Naval Stores Co., 142 La. 502, 77 So. 131; Illinois Cent. R. Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738.
Penalties and stipulated or liquidated damages are necessarily special damages since they may be arbitrarily fixed, and for the defendant to recover the demurrage charges it must be shown not only that plaintiff was informed that defendant was under a general liability for demurrage charges but also that plaintiff was fully aware that it in turn would be looked to for reimbursement in case of its own default. See Brantley & Doby v. William Comerford, 8176 of our docket unreported (Opinion Book 58). See La.Dig.
The general law is stated in 25 C.J.S., Damages, § 24, p. 484, thus:
“Damages arising out of the special circumstances surrounding the contract and different from those which would naturally and .probably flow from the breach of such a contract may be recovered, where it is shown that at the time of making the contract the defaulting party had knowledge of such special circumstances. * * * ”
We are of the opinion that defendant has successfully proven the claim in reconvention. Plaintiff’s agents and employees having full knowledge of the- special circumstances of the principal contract with the Levee Board and knowing well that time was of the essence and that a delay in completing the work under the subcontract would expose defendant, as principal contractor, to liability for the liquidated damages or demurrage, defendant is entitled to recover the amount thereof from the plaintiff.
Also to be allowed as an element of damages' is defendant’s claim for reimbursement for amount of wages it was forced to pay its foreman who had to be retained on the job during the demurrage period amounting to $735, and for social security taxes, unemployment taxes, and *192 workmen’s compensation insurance premiums aggregating $75.95, incurred in connection with the said wages of the foreman. The record contains adequate proof of the correctness of these items.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
REGAN, J., takes no part.