REGAN, Judge. ,
The plaintiff, Theodore A. Michel, a roofing subcontractor, operating his business under the trade name of Michel Sheet Metal and Heating Works, instituted this suit against the contractor, Elbert Suave, the surety on his bond, United States Fidelity & Guaranty Company,, and Mrs. Mary S. Masino, the owner of property upon which Michel had installed a tile roof, endeavoring to recover the sum of $2,372.15, less $778.15 previously paid on account thereof, leaving a balance due and owing of $1,594, together with 10% of the foregoing amount as attorney’s fees.
After the1 disposition of several exceptions the defendants answered and, in substance, denied that they were indebted unto the plaintiff in any sum whatsoever.
The lower court rendered a judgment as prayed for against the United States Fidelity & Guaranty Company and dismissed the suit as against the owner. The Court also dismissed the suit against the contractor for the reason that he had been adjudicated a bankrupt. From that judgment both the surety and the owner have appealed.
■ The record reveals that .on March 19, 1951, Mrs. Mary S. Masino entered into a building contract with Suave for the construction- of a single brick veneer -residence in Spain Street in -this City; for- the sum of $24,675. The contract initially provided for the installation of an asbestos shingle roof in accordance with the plans and specifications- ptepated -by Pi M. Allison, Architect. Subsequently; the Contract 'was amended to provide for a red clay tile roof at an additional cost. In May of 1951, the contractor and the plaintiff entered into an oral contract, as was their customary method of transacting business, wherein the plaintiff agreed to install a tile roof on both the residence and the garage as well as gutters, downspouts and duckbills. On May 19, 1951, the plaintiff completed the installation of the tile roof both on the dwelling and the garage. On July 18, 1951, at which time the residence was almost completed, plaintiff .then installed gutters, downspouts and duckbills. On November 10, 1951, at the request of the contractor and the owner, plaintiff rechecked the roof and replaced several tiles and did other corree-, tive work in order to satisfy both parties. On or about December 6, 1951, plaintiff asserted that he was informed that his work had been approved by the contractor and the owner and he was paid by the contractor on account thereof $778.15, leaving a balance due of $1,594, which is the subject matter of this litigation.
On May 18, 1953, or approximately two years after the inception of plaintiff’s work a notice of default was filed in the public records by the owner against the contractor therefore, on June 2, 1953, the plaintiff, as a sub-contractor, recorded a -sworn statement of his claim in order to secure a lien' and privilege on- the property. Plaintiff related that the installation of the roof and the sheet metal work was performed in a workmanlike manner and in conformity with his oral contract with Suave, which' reflected the same quality of work that was évident in ten of the eleven other houses erected by the contractor.
Counsel for the defendants has insisted in oral argument before this court that the work was totally unfit for the purpose for which it was intended and, therefore, the defendants are not indebted unto the plaintiff in any sum -whatsoever. Counsel has paradoxically pointed out in his original answer-and in his brief filed herein that the work performed by the plaintiff is defective in the following particulars' that numerous tiles' are improperly nailed,' chipped and cracked; there áre “d'i'p'S and- *175 waves in the roof visible to the náked eye”; ' plaintiff, contrary to the plans and specifications, installed duckbills instead of down- , spouts; • the gutters are higher than the edge of the roof shingles with no flashing , and finally that plaintiff did not furnish .and-install a vent for the kitchen fan. However, there is not a scintilla of evidence con-, tained in the.record reflecting the amount of money, that the owner would have to expend in order to correct the foregoing defects. Ordinarily, when a contractor fails to comply in detail with his agreement, but does, in substance, comply therewith, the owner must pay the contract price less such amount as he or she may necessarily expend to effect proper completion thereof. Du Bos v. Sanders, 174 La. 27, 139 So. 651; Merrill v. Harang, La.App., 198 So. 386; Sarver v. Barksdale, La.App., 24 So.2d 649; Home Services v. Marvin, La.App., 37 So.2d 413; Banks v. Reed, La.App., 52 So.2d 554; Moore v. Usrey & Usrey, La.App., 52 So.2d 551; Montague v. Milan, La.App., 67 So.2d 351.
The plaintiff testified convincingly and' at length that he installed the roofing and the sheet metal ’ work in conformity with his oral agreement with the contractor; that he embodied in this work the same skill which he had manifested, in similar agreements effecting at least ten other houses erected by the contractor; after the work was completed both the contractor and the owner inspected it and uttered no dissatisfaction; it was long after the termination of the job, especially when he started pressing them for a little money that complaints began to emanate from the owner. He.conceded that while he had seen the plans of the residence he never saw nor was he shown the, specifications and, in this connection, he reiterated that he performed this contract exactly as, orally agreed upon, including the omission of a vent for the kitchen fan. In confirmation of the foregoing statement Suave, the contractor,- upon being interrogated “Did * * * Michel perform all of the services he was retained by you to perform in a satisfactory, and workmanlike manner?” responded “To the best of my knowledge, yes.”
Plaintiff conceded that there were “low and'high spots in-the roof”,1 but then explained this perceptible condition by relating that “some of those rafters were two by eights and some of them were two by sixes * * * and that made this roof wave which is something which was no fault of mine ****** that roof was built to take an asbestos’ roof, and I was hired to put -on a -tile roof and that makes quite a difference in whats underneath that roof. * * * I am saying that if you have dips and waves, it is due to your .contractor’s construction and not to my tile roof;” ■
Defendants, on the other hand, produced both expert and lay testimony which, in ouj: opinion, .did not corroborate their contention tjiat the work performed by plaintiff was'totally unfit for the purpose for'which it was intended; ‘ Our appreciation' of the significance of this testimony is that it only related to defects which, they insisted, required some corrective" work; but, as we have related hereinabove, no effort was made to evaluate the cost thereof.
The trial court was of .the opinion that plaintiff had never seen nor : had. he been shown the “specifications” by the general contractor and that he had performed his work in conformity with • his oral agreement with Suave exactly and, precisely as he had on ten of the eleven houses which the contractor had erected.
We have made a careful analysis of the record and believe that it fully supports the conclusions reached by the trial' judge.' In- pur opinion the evidence adduced herein proves that the plaintiff’s contract was performed- and completed in a. workmanlike manner and if any subsequent defects developed therein it was not.due to the fault of the plaintiff’s work, but was caused by the incompetency of the contractor who erected a residence • to support an asbestos roof and then employed the plaintiff to install a tile roof thereon.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.