LANDRY, Judge.
Plaintiff, Bart Construction Company, Inc., prime contractor for the construction of a residence for one Edwin Newchurch, Baton Rouge, Louisiana, instituted this action against defendant W. L. Bailey, subcontractor, for the alleged breach of Bailey’s sub-contract to perform all carpenter work required in the completion of the Newchurch home. Plaintiff seeks to recover the cost of completing the work undertaken by defendant after defendant’s alleged abandonment of the project without cause.
The trial court adjudged defendant to be in default and rendered judgment in favor of plaintiff in the sum of $2,144.57, which was found to be the cost of completing the work called for in defendant’s contract. From said adverse judgment, defendant has appealed.
The contract between plaintiff and defendant (a copy of which appears in the record) provides that in consideration of the payment by plaintiff of the sum of $4,200, defendant undertook to perform the work therein specified (being all carpenter work required in the construction of the Newchurch home) within 90 days of the contract date of February 10, 1955. On or about March 31, 1955 (the project then being 30% to 45% complete) all construction thereon was stopped by the supervising architect for alleged defective workmanship and imperfections set forth in a letter from the architect to plaintiff contractor bearing date of March 31, 1955. The letter in question (the original of which appears in the record) lists numerous items which the architect demanded be corrected prior to resumption of further work. Several of the items in question related to carpenter work performed by defendant including, inter alia, straightening of all fascia boards, straightening bowed studs, replacement of defective wood molding covering screen vents, leveling living room windows, correcting fire stops to make them set flush with wall studs and flattening soffits around the carport.
The first issue to be resolved is' the liability vel non of defendant for the cost of completing the work undertaken.
In this connection, plaintiff relies upon the terms of LSA-C.C. art. 2769 which provides that the undertaker who fails to perform work he has contracted to do, or who neglects to execute the work in the manner and at the time agreed to, is liable in damages for losses ensuing from such breach or nonperformance. Defendant maintains the defects listed by the architect were due to inferior material and not substandard craftsmanship. In addition, defendant contends he was justified in leaving the job because plaintiff failed to keep him supplied with sufficient material with which to work. Finally, defendant Bailey avers he did not leave or abandon the job as alleged by plaintiff but that work was halted by the architect Hughes because the plumbing sub-contractor had cut from 12 to 20 studs in the kitchen wall in the process of roughing in the plumbing.
We believe the evidence supports the conclusion of the learned trial judge who found that defendant did, in fact, leave without legitimate cause. On this important issue, Mr. Kreppein, a construction superintendent for plaintiff, testified the studs in the kitchen wall were cut by the plumber subsequent to defendant’s leaving the job. The evidence further shows the architect on the job was most exacting and demanded superior workmanship throughout the entire project. The architect’s letter of March 31, 1955, stopping all progress of the work until correction was made of the defects listed therein, does not mention defective studs in the kitchen wall, an item so obvious it could hardly have been overlooked by an architect as particular as Hughes proved to be. In addition, Hughes’ letter expressly states that all of the defects required to be corrected appeared to *54 be due to poor workmanship and inability to read or interpret plans and specifications. Moreover, in testifying at the trial, Hughes stated the matter of the kitchen studs did not come to his attention until after he had written his letter of March 31, 1955.
Defendant’s claim that the defects alluded to by the architect were due to inferior material and not inferior carpenter work is not sustained by the evidence of record. As previously mentioned, the architect’s letter, as well as his testimony during the trial, clearly demonstrates that the matters about which he complained were the result of inferior carpentry and not poor or improper material. To cite one example given by the architect, he testified the roof sagged and the fascia boards were “wavy” and uneven because the rafters had been improperly cut or notched and were unevenly seated, a condition which could only be corrected by leveling each rafter individually. In this regard, Hughes’ testimony is corroborated by that of plaintiff’s foreman Kreppein to the effect the bowed .studs resulted from defendant’s failure to properly brace the wall studs before superimposing the roof thereon. It is significant to note that throughout his testimony, Kreppein referred to the fact that the architect Hughes was most particular and exacting and would accept nothing less than perfection. He also stated that some of the work rejected by the architect would have been acceptable to him and that in an effort to help defendant he had, in fact, approved some of the work subsequently rejected by Hughes. Defendant’s claim he was not provided with sufficient material to keep the job in progress is not substantiated in the record. Kreppein’s testimony is to the effect there was no shortage of material and that if there had been it would have been defendant’s own fault since all defendant had to do was to make known at the end of each day the materials he needed and Kreppein would have ordered it delivered on the job the next morning. Although there is testimony contradictory to that of Kreppein on the matter of availability of material, the trial court resolved this issue adversely to defendant and we find no manifest error therein. Moreover, we are convinced defendant deserted the project with no intention of returning. We are further convinced the record justifies the conclusion defendant left because of the exactitude of the architect, hardly a legitimate cause for defendant to decline performance of his agreement. The evidence also shows Krep-pein requested Bailey to return to the job but Bailey refused on the ground he had undertaken construction of two additional houses which projects he could not leave' for a period of approximately 10 days and also because of his inability to employ other carpenters for the Newchurch job.
Defendant having defaulted on his contract is therefore liable for the cost of correcting the defective workmanship for which he was responsible as well as completing the terms of the .agreement. Pelican Signs, Inc. v. D’Aquin, La.App. Orl., 107 So.2d 722; Spicuzza v. Ranzino, La.App. Orl., 73 So.2d 208; Home Services v. Marvin, La.App. Orl., 37 So.2d 413; LSA-Civil Code, Article 2769.
Learned counsel for defendant complains of the action of the trial court in permitting recovery for wages for unskilled laborers employed by plaintiff after defendant left the work. The record indicates that plaintiff did, in fact, employ unskilled labor to remove some of the defective work, which laborers were paid wages less than skilled carpenters. Piad plaintiff employed expert carpenters to tear out the defective workmanship, the cost to defendant would undoubtedly have been greater and defendant may not be heard to complain of measures taken by plaintiff and redounding to defendant’s benefit
The paramount issue to be resolved herein is whether defendant Bailey should *55 be held responsible for the cost of correcting defective work admittedly performed by workmen employed by plaintiff after defendant abandoned the project.
Although Article 2769, LSA-C.C. provides a defendant is liable in damages for the cost of rectifying1 his mistakes as well as the cost of finishing the incomplete project, we are aware of no authority holding such a defendant may be held responsible for more -than one corrective operation. The rule announced in the aforesaid Codal authority is unquestionably subject to the principle or reasonableness as well as equitable considerations which, in .our opinion, dictates the party in default may be held liable in cost only for an initial or single correction of the defects involved. In other words, defendant herein may not be held accountable for defective workmanship performed by plaintiff’s employees subsequent to defendant’s default. To hold otherwise would permit an owner or contractor to take undue advantage of a contractor or sub-contractor and induce his financial ruin by repeated rejection of workmanship over which the contractor or sub-contractor has no control. The right of the owner or contractor to recover the cost of correcting the errors of a defaulting party is subject to the condition that the remedial work will be properly performed in the first instance.
The court below, after rehearing, rendered judgment in the amount of $2,144.57 which amount includes the cost of correcting the defects mentioned as well as completion of the work, less the amount which was still due defendant under the contract. It appears, however, the amount awarded includes several items not chargeable to defendant herein.
There must be deducted from the award to plaintiff herein the cost of labor ■involved in the replacement of the 12 to 20 studs in the kitchen wall cut by the plumbers since defendant is not responsible therefor. The award must be further reduced by the amount of wages paid for the replacement of the screen molding rejected by the architect. The evidence fails to show that the defective molding was the 'result of inferior workmanship but rather the testimony of the architect indicates the molding itself was spotted and the damage thereto may have occurred subsequent to its installation.
Also to be deducted from the award is the cost of replacing fire stops. The testimony of the architect makes it abundantly clear it was unnecessary to remove most of the fire stops since the matter of making them flush with the studs was simply a question of tapping them with a hammer. Consequently, any labor cost incurred by plaintiff in the unnecessary replacement of fire stops may not be chargeable to defendant and cannot be included as an item of damages.
Because of the peculiarities of the'design of the dwelling and the insistence of the architect upon .quality workmanship plaintiff was compelled to replace the fascia boards and soffits (improperly installed by defendant in the first place) more than once. La•bor costs incurred by plaintiff subsequent to the first correction of this condition is not ■the responsibility of defendant and the judgment in plaintiff’s favor must be further reduced .to the extent of the value of labor incurred for second and subsequent corrections of this item.
The contract provided for the construction of kitchen cabinets of unusual design which the architect required be torn out and rebuilt two or three times before he would accept the work as satisfactory. Although defendant was responsible for the construction of the kitchen cabinets as part of his unperformed obligation, the cabinets were built by plaintiff after defendant left the job and defendant may not be held for the cost of correcting the errors of plaintiff’s carpenters. Defendant is. responsible only for the cost of the initial installation of these cabinets and the *56 judgment rendered must likewise be reduced by the cost of the second and all subsequent installation thereof.
The trial court allowed as an item of damages the sum of $125.12 representing wages paid a truck driver for hauling material to the job. Defendant Bailey was not obligated under his contract to haul material or provide a truck driver, Moreover, plaintiff's superintendent Kreppein testified the truck driver would have been in plaintiff’s employ for hauling materials to the Newchurch job in any event. Said item is therefore an expense not occasioned by defendant’s breach of his contract and must be deducted from the amount allotted plaintiff herein.
In computing the damages sustained by plaintiff, the learned trial court took plaintiff’s itemized account of the completion cost, namely, $5,265.18, subtracted therefrom the balance of $2,200 which would have been due defendant had he completed the contract and arrived at the figure of $3,065.18. He then deducted from said latter sunj the amount of $232, representing l/£th of the salary paid to plaintiff’s superintendent Kreppein, which plaintiff included as an item of cost because Kreppein was required to devote his full attention to the Newchurch job after plaintiff left. The evidence is uncontradicted to the effect Kreppein (whose duty it was to supervise more than one job at a time) was thereafter assigned almost exclusively to the Newchurch residence in an effort to minimize demurrage charges or delay penalties incurred by plaintiff herein. Plaintiff contends the district court improperly disallowed this item and although we feel that it should have been allowed, under the authority of Frees & Laine v. C. W. Vollmer & Co., La.App., 78 So.2d 187, plaintiff having neither appealed nor answered the appeal, we are powerless to rectify the error. A similar situation exists with respect to the disallowance by the district court of an item representing the cost of brick work necessitated because of defendant’s defective installation of windows. Although the item appears justified, plaintiff having failed to appeal or answer the appeal may not be granted relief with respect thereto.
Counsel for defendant maintains that in computing the amount of plaintiff’s judgment the trial court improperly duplicated a sum allowed for brick work for which reason further reduction should be made. The record reveals that included in the itemized account submitted by plaintiff was a charge of $688.61 expended for bricklayers and listed as part of the total completion cost of $5,265.18. Upon Kreppein testifying that he felt only a portion of this item was properly chargeable to defendant, the trial judge reduced said sum of $688.61 to $139.25. ITe initially subtracted from the total award $139.25 instead of $549.36. However, on rehearing he disallowed the entire item of $688.61 for bricklayers and corrected his error by subtracting the additional sum of $549.46. We find nothing erroneous about such mathematics since the sum of $139.25 and $549.36, both of which amounts were deducted, equals $688.61, the amount of the brick work disallowed.
Defendant’s final contention that plaintiff has not offered sufficient and proper proof of the costs expended in completing the project is without foundation. The record shows plaintiff kept daily time sheets on each workman employed on the job. Appropriate deductions were made in each instance for time which any of the workmen so employed may have spent on any project other than the Newchurch job on any given day. The records in question were verified by plaintiff’s accountant and appear to have been a satisfactory, reasonable and accurate way of keeping track of the amount spent by plaintiff in the completion of the work.
The judgment of the lower court must be amended by deducting therefrom the amounts erroneously charged against defendant by the trial court. The extent of *57 such deductions can be determined only upon the introduction of additional evidence. It necessarily follows that this matter must be remanded to the trial court for further proceedings consistent with the views herein expressed.
It is, therefore, ordered, adjudged and decreed that this matter be and the same is hereby remanded to the lower court for further proceedings consistent with the views set forth herein. All costs of this appeal as well as all costs in the trial court to be paid by the defendant appellant, W. L. Bailey.
Amended and remanded.
HERGET, J., recused.