BAILES, Judge.
Plaintiff, Menge Pump & Machinery Company, Inc. (Menge), filed this action to recover $4,450.00, plus interest and attorney fees, allegedly due by defendant, A. F. Blair Company, Inc. (Blair), as the unpaid balance of the purchase price of a certain generator and accessory equipment.
The trial court denied the demands of the plaintiff and dismissed the suit at its cost. Plaintiff appeals from this adverse judgment. We find no error in the decision of the trial court, and accordingly, the judgment appealed from is affirmed at appellant’s cost.
The Assumption Parish Waterworks District No. 1, determined to provide an emergency standby generator for the operation of its system, and to initiate construction of this facility, placed the job on bids.
The project engineers, Bernard and Burke, Inc., of Baton Rouge, provided plans and specifications for the construction of the installation.
Blair, being unfamiliar with the generating equipment and accessories called for by the plans, and desiring a subcontract bid for this portion of the job, contacted Menge for a price for the equipment called for by the specifications. At this time Menge already had secured from the engineers a copy of the plans and specifications. In response to this invitation, a bid price was furnished by Menge to Blair, and Blair used this Menge bid price in its bid for the construction of the facility.
Assumption Parish Waterworks District No. 1 awarded the contract to Blair as the low bidder. Menge’s salesman was present when the contract was awarded to Blair. Thereupon Blair advised Mr. Drenning, Menge’s salesman, that the generator and accessories would be needed for the job *322 and at that time the order was placed by Blair for the necessary equipment. The next day Mr. Drenning reported the order to his superior, and in turn the order was placed with the manufacturer, Onan.
Blair was required to complete the job within 90 working days. The contract provided for a delay penalty, or demurrage, of $50.00 for each day the completion was delayed. Before the job was accepted by the owner a total delay of 178 days, or a money penalty of $8,900.00, had accrued. Through negotiations between all parties the sum of $4,450.00 was agreed to as the amount of assessed penalty. In settling with Menge for the price of the equipment, the demurrage of $4,450.00 was deducted from the subcontract price of $15,040.00 as Blair attributed the entire delay in completion to Menge.
This dispute between the parties arises from the alleged failure of Menge to furnish a circuit breaker in accordance with the specifications. The determination that the circuit breaker furnished with and attached to the generator did not meet specifications was made by the project engineer. Upon being advised that the circuit breaker was not in compliance with specifications, Menge did not protest this determination of the engineer. Menge ordered from Westinghouse the type circuit breaker which the engineer required for compliance.
The generating equipment was delivered to the job site on July 12, 1966, however, the equipment required of Menge was not finally accepted by the owner until June 23, 1967. After being advised by the engineer that the circuit breaker originally furnished did not meet specifications, on August 12, 1966, Menge ordered the required circuit breaker which was not delivered until December 12, 1966. Subsequent to this date, it was found that the circuit breaker was not operative, and that it had a broken part. Eventually the deficiencies were corrected and the job accepted as stated supra.
The position of the plaintiff is that upon being notified by defendant that it wanted the generator and accessories, a purchase order fully describing the equipment in detail encompassed in the subcontract bid price of $15,040.00 was executed; that the purchase order was not consumat-ed until sometime after Blair had been awarded the contract, even though the verbal order had been placed by Blair with Menge, and Menge had placed the order with Onan, the manufacturer. Menge’s attitude is that the circuit breaker required by the engineer was not included in the description of equipment set forth in the purchase order; that the circuit breaker supplied with the generator complied with its written contract when the generator was delivered to the job site on July 12, 1966; and that the circuit breaker located on the generator was all it was required to furnish. Consequently, the delay for completion of the job was not attributable to delay occasioned by Menge.
We find this position untenable. Clearly, the plaintiff, with its peculiar knowledge of the generator and allied equipment, including the circuit breaker, and from its awareness of what was called for by the plans and specifications, and its agreement to furnish the equipment called for in the plans and specifications for the bid price of $15,040.00, was bound by the verbal contract entered into when Blair notified Menge that it (Blair) had been awarded the contract and advised Menge to order the generator and other accessories in accordance with the specifications in order to fulfill the contract. The written purchase order was nothing more than a memorandum for Menge.
Having determined that the verbal order placed by Blair with Menge through its salesman, Mr. Drenning, was the binding contract by which Menge obligated itself to fulfill in accordance with the published plans and specifications, the cases cited by plaintiff relative to the prohibition of varying the terms of a formal written contract by parol evidence are inapposite to *323 the instant case. Therefore Blair was justified in relying on Menge to furnish the equipment called for by the plans and specifications within the allotted time provided in the contract with the water district.
Plaintiff argues that the defendant failed to carry its burden of proof that the plaintiff was required to furnish a circuit breaker different from that which came with the generator, that defendant failed to offer in evidence the plans and specifications or the testimony of any expert witness to interpret the plans.
There was no necessity for the defendant to file in evidence the plans for the reason there appeared to be no dispute that defendant was required to furnish the circuit breaker. We find Menge was aware of its responsibility because when the engineer advised that the circuit breaker did not meet specifications, without protest, plaintiff ordered and ultimately obtained the required circuit breaker.
The record supports the conclusion that the entire delay and demurrage assessed against Blair was brought about by the tardiness of Menge in furnishing the circuit breaker in a serviceable condition as required by the plans and specifications.
A similar case was considered by this court in Frees & Laine v. C. W. Vollmer & Co., Inc., La.App., 78 So.2d 187 (1955). Therein plaintiff sued defendant for the balance due on an oral contract for performance of certain dirt work. Defendant resisted plaintiff’s demands on the ground that the contract was not timely completed through plaintiff’s fault and defendant suffered demurrage approximating the amount sued for.
In sustaining the defendant’s position, this court on page 191, stated:
“The LSA-Civil Code provides:
‘Art. 1930. The obligations of contract (contracts) extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.’
‘Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.’
“[3] It is well settled that for breach of contract without fraud or bad faith only those damages which were in contemplation of the parties at the time of the making of the contract may be recovered. R.C.C. arts. 1934, 1943; Lee Lumber Co. v. Union Naval Stores Co., 142 La. 502, 77 So. 131; Illinois Cent. R. Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738.
“Penalties and stipulated or liquidated damages are necessarily special damages since they may be arbitrarily fixed, and for the defendant to recover the demur-rage charges it must be shown not only that plaintiff was informed that defendant was under a general liability for de-murrage charges but also that plaintiff was fully aware that it in turn would be looked to for reimbursement in case of its own default. See Brantley & Doby v. William Comerford, 8176 of our docket unreported (Opinion Book 58). See La.Dig.
“[4] The general law is stated in 25 C. J.S. Damages § 24, p. 484 thus:
‘Damages arising out of the special circumstances surrounding the contract and different from those which would naturally and probably flow from the breach of such a contract may be recovered, where it is shown that at the time of making the contract the defaulting party had knowledge of such special circumstances. * * *
It was the intention of the parties that Menge was to supply, within the time lim *324 its of the contract, for the stated price of $15,040.00 a generator and accessories, including the circuit breaker, which would meet the requirements of the plans and specifications relative thereto.
Plaintiff was apprised of the existence in the contract of the penalty for failing to complete the work within a 90-day period. Plaintiff actually had a copy of the plans and specifications of the job before defendant submitted his bid, and when defendant became aware of the extended delay of the plaintiff in furnishing the necessary equipment it repeatedly prodded plaintiff for completion of the work citing it to the demurrage provisions of the contract.
The trial court resolved that the cause of the delay was entirely attributable to the plaintiff and that it should bear the loss occasioned through its fault. In this finding, we discover no manifest error.
Accordingly, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.