139 So. 651

**DU BOS et al. v. SANDERS.**

No. 31291.

Jan. 4, 1932.

Rehearing Denied Feb. 1, 1932.

Deutsch & Kerrigan, of New Orleans, for appellants.

Leslie Moses, of New Orleans, for appellee.

LAND, J.

On May 14, 1930, Joseph Scorza, a building contractor, entered into a written contract with defendant to raise and set back a house owned by defendant, at municipal Nos. 1834–36 Annette street, city of New Orleans; to make certain improvements and repairs on the house, "in a perfect workmanlike manner," for the sum of $4,162; and to deliver same, within four months from date of building permit, free from all liens and claims, "in perfect repair, broom-clean and complete."

On June 25, 1930, a supplemental written agreement was entered into by the contracting parties for extra work amounting to $224.-40, or a total price of $4,386.40 for the entire building contract.

On November 4, 1930, the contractor assigned to James Du Bos, Jr., plaintiff, his claim against defendant, together with all of his rights under the lien filed by him on the same date, in the mortgage office for the parish of Orleans.

Plaintiff alleges that the contractor completed the work called for by his contracts in a good and workmanlike manner, but that defendant refused to accept same when tendered to her on September 22, 1930.

Plaintiff admits, in his petition, that $1,500 was received on the contract price, and prays for judgment against defendant for a balance of $2,886.40, with legal interest from judicial demand until paid, and full recognition of the lien filed against the property.

In her answer, defendant admits that she refused to accept the building when tendered to her, but alleges that it was on the grounds that the contractor had been formally put in default prior to the tender, and that the building had not been completed in accordance with the contract and the plans and specifications.

In her answer, defendant also admits that there is an unmatured balance on the contract of $2,886.40, being the amount herein claimed by plaintiff; but specially pleads in compensation, against the balance, the following items:

(a) Cost of completion according to contract plans and specifications $1,830.00
(b) Demurrage to date, 60 days at $5.00 per day.................... 300.00
(c) Attorney's fees incident to completion and enforcement of the contract ........................ 750.00

Total ....................... $2,880.00

After deducting her claim in compensation from the amount sued for, defendant deposited in the lower court the balance of $6.40, as the full amount due plaintiff.

The trial judge dismissed, as of nonsuit, both the demand of plaintiff and the plea of compensation of defendant.

From this judgment all the plaintiffs have appealed, and defendant has filed an answer to the appeal; and has prayed that the judgment appealed from be amended, either by dismissing plaintiff's suit, or by maintaining defendant's plea of compensation, and, as thus amended, that the judgment be affirmed.

It is alleged in the petition that, under the terms of the building contract, payment of the

amount due Joseph Scorza was to be made to the joint order of Scorza and the Globe Indemnity Company, surety for Scorza under the contract; that the Globe Indemnity Company appears herein for the purpose of waiving any of its rights, under the provision authorizing the payment of the amount due by defendant to plaintiff James E. Du Bos, Jr., in accordance with the assignment; and that Scorza appears herein for the purpose of confirming the assignment made by him to plaintiff, James.E. Du Bos, Jr., of his claim against defendant, together with all of his rights under the lien securing the payment of the amount due.

On September 15, 1930, defendant appeared before a notary public in the city of New Orleans, and, in an affidavit made by her, declared Joseph Scorza, contractor, to be in default, for failure to complete the contract within four months from May 14, 1930, the date of issuance of the building permit; for refusal and neglect to supply a sufficiency of material and workmen; for unreasonable neglect and suspension of work; and for failure and refusal to follow plans and specifications and to. comply with his contract.

On September 16, 1930, this formal notice of default was served on Joseph Scorza by registered mail, and on the same day was duly recorded in the mortgage office for the parish of Orleans.

Andrew S. Montz, office architect for twelve years, and architect for the city of New Orleans for the last eight years, was employed by defendant to examine the building, after having received a copy of the plans and specifications and building contract.

On October 8, 1930, after having made three or four inspections of the building, Mr. Montz made a report, showing a list of itemized defects and work which was poorly executed.

1. The first defect found by Mr. Montz was that there was no rat-proofing at all. The witness testified that: "They did not put any chain wall in, which is required by law, to extend two feet below the grade." This is the requirement for rat-proofing. Tr. 69, 78, 87.

It is provided under the head of "General Conditions," in the "Specifications," that: "The contractor is to be governed in all cases in the construction of this work by the building Laws of the City and such Ordinances pertaining to construction of such buildings are to be strictly adhered to in all cases." Tr. 13.

As Mr. Montz, architect of the city of New Orleans, testified that rat-proofing was required by law, and as the city ordinances as to construction must be adhered to in all cases, as stated in the specifications, it was the duty of the contractor to have put in the rat-proofing.

Hyman Rabinovitz, a graduate of Tulane University, and an engineer and contractor of twenty years' experience, was furnished with the report of Mr. Montz, architect, and examined defendant's building and made an estimate as to the cost of completing same, according to plans and specifications.

This witness testified that he made a very careful examination of defendant's premises and of the plans and specifications. The estimate made by him for rat-proofing, i. e., chain wall and other masonry in connection with the rat-proofing, is $300. Tr. 74.

This item is allowed, as it is required by law.

2. Originally, the plans called for an eight-foot basement, but the city of New Orleans would not issue a permit, as a basement of that height would be considered as an additional story. So the permit was issued with the understanding that the basement would not be over seven feet, six inches high. On May 26, 1930, defendant wrote the contractor a letter authorizing him "to make the basement at 1834 and 1836 Annette Street 7'–6" in accordance with city laws."

The basement was intended to be built by the contractor only 7'–6" high. Mr. Montz, the architect, testified that it was "about seven feet four and a half to seven feet five to some of the joists where the joists are not as deep as in other places." Tr. 88.

As the contractor has substantially complied with his contract in this respect, nothing more can be required of him. The items of $300 for raising the house and of $300 for changing masonry, due to the proposed raising, are therefore rejected.

3. The item of $150 is reduced to $100 as the sum of $50 of this amount was charged for breaking and lengthening joints in the pipe in the bathroom, due to the contemplated raising of the basement. Tr. 73.

The $100 left, after subtraction of the $50, is for changing the tub, and is allowed, regardless of the raising of the basement, as it was necessary, as shown by the following statement made by Mr. Rabinovitz: "The tub isn't the proper tub for the place; it isn't the tub that is specified, according to the letter of Mr. Montz. The tub installed was a tub that should have been built in, and

it is a built-in tub but not in a built-in place. In other words, one of the ends is exposed. That tub is not suitable for that particular location." Tr. 74.

Mr. Montz, the city arcitect, also testified that: "The tub in the bath-room on the first floor, on the 1834 side, is not according to the plans. They have the tub in the bath-room now in a square corner, with a cutting edge, and anybody going into that bath-room now, and not being careful, they could cut their legs on it." Tr. 90, 91.

4. Plaintiff contends that, because the specifications do not call for a drop in the pavement in the basement, defendant cannot complain. The building contract, however, was to be governed in all cases by the building laws of the city of New Orleans.

Montz, the city architect, testified specifically that: "The law requires that the grade of a lot should rise one inch in every ten feet from the front to the rear. That pavement in the basement on the inside is almost level, and, whenever that lot will be filled to grade, the pavement in the rear of the house will be seven inches below the outside grade." Tr. 87.

Under such conditions, the basement of defendant's house would overflow inevitably, should water from the street back upon the lot in the event of heavy rains. This is a serious defect in construction, and it must be remedied. In order to make the cement basement according to grade, a new layer of cement has to be placed upon it. This item, including necessary drains, amounts to $350, and is allowed, as it is required by law. Tr. 75.

5. The contractor also placed the drain pipe in the basement, the down pipe connecting with the pipe which is set in the basement, and that would at any time cause the pipe to be clogged up, and the water from the roof would flood the basement. Tr. 89.

It requires $40 to remedy this defect, including the roof flashing, metal work, and down pipes. Tr. 75. This charge also covers complaint about leaky roof, and is allowed. Tr. 76.

6. Mr. Rabinovitz, in allowing $100 for all plastering, included in that sum the amount of plastering that would have to be repaired due to the proposed raising of the basement to 8 feet. As the original height of the basement was reduced to 7'-6" by the contracting parties, and as this height was substantially reached by the contractor, there was no further raising of the basement required, and, consequently, no charge can be made for repairs to plaster occasioned by the raising of the building.

As Mr. Rabinovitz does not state the cost of the repairs to the plaster, we are unable to determine from the evidence in the record what part of the $100 should be allowed for the interior of all of the walls, and this item is rejected.

7. Mr. Rabinovitz has also allowed $100 for, any contingencies that might come up. This amount was thrown in, merely for the reason that "you don't know how much trouble you are going to have after the house is raised." As the house does not have to be raised, this item is rejected.

8. The hardware throughout was not properly set, as testified to by Mr. Montz, the city architect. An estimate of $10 for this item, made by Mr. Rabinovitz, seems to be reasonable, and is allowed.

9. Painting exterior and interior of house is a lump sum item of $300. Mr. Rabinovitz testified that the painting, particularly, was not done in a workmanlike manner and was bad. Tr. 68, 71.

In speaking of the exterior painting, Mr. Montz, city architect, testified that: "At one time we had about six different shades of paint on the trimmings and the openings, and still have several shades left that are not uniform." Tr. 90.

The "Painting Work," as specified, requires that: "All new work on the exterior of the building is to have a prime coat and 2 coats of John Lucas Paints, all old work is to have 2 coats of Lucas paints, the color is to be selected by the owner. * * * In the bath-room there is (are) to be 2 under coats of white paint and a finished coat of enamel, white."

When it is considered that defendant was to pay $4,386.40 for the house, when complete, we do not find it possible to force her to accept the miserable paint job tendered to her by the contractor. The item of $300 is therefore allowed. It includes the painting of the mantels also.

10. Item of $80 is said to include all the carpenter work and lumber necessary to complete the job. The setting of mantels is included, but there is no evidence in the record to show what other work is included. As the price of setting the mantels is not given, the whole item must be rejected.

11. The light outlet over the stairs to the second floor was not properly set, since it

was not in the center of the wall, as it should have been. Tr. 91. The item of $25 for electric work, to remedy this defect, is necessary and is allowed.

■ The testimony of defendant's two witnesses, the city architect, and the contractor and engineer, establishes to our satisfaction that it will require a total cost of $1,125, as allowed herein, to remedy the defects in the building and to bring the inferior workmanship employed thereon up to the standard required by the contract and specifications in this case—"a perfect workmanlike manner" and "building laws of the City strictly adhered to in all cases."

The testimony of the contractor and his building expert "that it is a satisfactory looking job for the class of building," and that it will cost only $48 to remedy all defects, does not impress us in the face of the fair and convincing testimony of defendant's witnesses, each of whom is a seasoned expert in his line, and is entitled to full credit as a witness.

■ 12. Defendant claims an attorney's fee of $750 against Scorza, the contractor, and against Globe Indemnity Company, his surety, in solido, as incident to the completion and enforcement of the building contract, on the ground that the contractor was in default.

It is provided in the building contract in this case that: "During the progress of the work, if said Contractor should become bankrupt or he or his surety refuse or neglect to supply a sufficiency of material or of workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the Plans and Specifications, or comply with any part of this contract, the said Owner, or his agent, shall have the right and power to enter upon and take possession of the premises, and may at once terminate this contract, whereupon all claims of said Contractor hereunder shall cease and the said Owner may provide material and workmen sufficient to complete the said work, after giving forty-eight hours notice, in writing, directed and delivered to said Contractor in person, or at his residence or place of business, and the expense of the notice, and the completing of the various works, together with all costs, charges or attorney's fees incident to the completion or enforcement of this contract shall be a charge and lien against said Contractor and his surety, and may be deducted from the amount due or to become due him." Tr. 10, 11.

Globe Indemnity Company, as surety for defendant, has intervened in the building contract, and has signed bond to the owner, the defendant, in the sum of $4,162, conditioned, in part, "to fully secure and protect the Owner from all liability under the provisions of Act No. 167 of 1912, as amended by Act No. 221 of 1914, and all other laws upon the subject, and from all loss and expense of any kind, including all costs of Court, or Attorney's Fees made necessary or arising from failure or neglect to promptly comply with all the obligations herein assumed by the said Contractor."

Plaintiff contends that defendant cannot recover attorney's fees in this case, as the contract was performed by Scorza, and, accordingly, defendant has not incurred any attorney's fees in the "completion or enforcement of the contract."

It is also argued by plaintiff that the services rendered by attorney for defendant were principally in an effort to straighten out, during the time the work was being done, arguments between Scorza and his client.

The contractor clearly failed to comply with his contract. He was put in default by defendant's attorney, and the completion and enforcement of the contract became necessary. Counsel for defendant drew up the pleadings, and gave his client advice frequently about the suit. He tried the case in the civil district court for the parish of Orleans and also in the Supreme Court. These services, in our opinion, are worth $350.

▮ 13. As to claim for demurrage. It is stated in the contract that: "It is agreed, that should the Contractor fail to finish said work on or before the time specified, he shall pay to or allow the said owner to keep out any sum due him on this contract, by way of liquidated damages, the sum of ———— dollars per diem, for each and every day thereafter that the said work shall remain incomplete."

The work was to be delivered to defendant, the owner, complete, "within four months from date of building permit."

The building contract fails to state the amount of the liquidated damages per day, and defendant has not proven that she has suffered any damages because of the delay, although she claims $5 per day for each day the building remained uncompleted, from and after September 14, 1930, or a total of 60 days.

The claim for demurrage is therefore rejected.

Defendant admits that there is an unmatured balance on the contract of $2,886.40, for which plaintiff has sued.

▮ As defendant is entitled to $1,125 for the completion of the building, and to $350 as attorney's fees for the enforcement of the building contract, the sum sued for, $2,886.40, should be credited with a total credit of $1,-475. due defendant, leaving as the balance due plaintiff the sum of $1,411.40.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that there be judgment in favor of plaintiff James E. Du Bos, Jr., assignee of Joseph Scorza, contractor, and against defendant, Naomi G. Sanders, owner, in the full sum of $1,411.40, with legal interest thereon from judicial demand until paid, and that defendant pay all costs in the lower court and on appeal.

On Application for Rehearing.

PER CURIAM.

▮ Plaintiffs pray for full recognition of their lien and privilege for the amount sued for in this case. As there is no dispute as to the lien and privilege claimed, and as the omission to allow same in original judgment was purely inadvertent, it is ordered that the original judgment be amended so as to recognize the lien and privilege of plaintiffs for the amount recovered, to wit, the sum of $1,411.40 on the house and lot of defendant, 1834–1836 Annette street, city of New Orleans.

It is further ordered that our original judgment, as amended, be made the final judgment of the court, and the petition for a rehearing is refused.