67 So.2d 351 (1953)
MONTAGUE
v.
MILAN.
No. 20008.
Court of Appeal of Louisiana, Orleans.
June 8, 1953.
Rehearing Denied October 19, 1953.
Adrian G. Duplantier, New Orleans, for appellant.
Henry G. Neyrey, Jr., New Orleans, for appellee.
REGAN, Judge.
This is a suit by plaintiff, Charles W. Montague, a subcontractor, against the defendant, Daniel A. Milan, the owner of the property and also an engineer, who acted, on this occasion, as his own contractor, for labor performed and material furnished to the defendant in the amount of $1,366.20.
Defendant answered and admitted the furnishing of labor and material, but denied that he was indebted unto plaintiff in any sum whatsoever and reconvened for the sum of $280 (corrected in brief to $270), representing money expended in correcting errors of construction caused by plaintiff. Defendant additionally requested that the court reserve unto him his right to recover damages from plaintiff for whatever loss he might, in the future, sustain as a result of the errors.
*352 There was judgment in the court, a qua, in favor of the plaintiff in the amount of $1,056.20, which apparently recognized that part of the defendant's suit in reconvention demanding the sum of $270 and rejecting defendant's request for reservation of his right to recover damages from plaintiff for whatever loss he might sustain in the future as a result of the contractor's errors in construction. From this judgment defendant has appealed. Plaintiff has answered the appeal praying that the judgment be increased to the sum of $1,332.60.
The record reveals that defendant visited the offices of plaintiff, where he deposited a set of plans and specifications and requested a bid for the driving of piling, concrete foundation and slab work. Several days thereafter, plaintiff's superintendent, Mike Lanoux, having figured, in writing, the cost thereof, submitted a bid to defendant, which he admits he accepted. The bid offered to perform the following work:

"Drive 62-25 foot pilings at 8.50 527.00
 Lay 265 feet of grade beam and
 caps (8 × 10) 556.50
 Lay 1595 sq. ft. of slab 957.00"

Subsequently, the slab work was cancelled by mutual agreement and, therefore, it is not an issue herein. After the piling had been driven and the grade beam laid, Lanoux discovered that he had laid 319 feet of grade beam in conformity with the plans instead of 265 feet as per the bid. Defendant concedes that plaintiff laid about 320 feet of grade beam, however, he asserts that he accepted plaintiff's bid without rechecking the plans to determine whether the measurements set forth in the quotation coincided with those in the plans. Lanoux' explanation is simply that it was an "honest mistake", which defendant should not be permitted to take advantage of unjustly. In any event, plaintiff is requesting payment for 319 feet of grade beam, which is the lineal measurement of the beam actually laid. Lanoux made no mention of this additional 54 feet of grade beam until he rendered defendant a bill upon the completion of the work.
The foregoing facts relate to the original contract. Subsequently extra work was performed by the plaintiff, at the request of the defendant. He drove five additional pilings for which he charged the agreed price of $8.50 each, or a total of $42.50. He provided 52 feet of additional grade beam for a porch which was laid also at the request of defendant.
The record reflects a stipulation to the effect that insofar as the piling is concerned, they were properly driven and the number thereof furnished was 67, and that the additional grade beam was 52 feet (for the porch) and that the agreed price was $2.10 a foot or a total of $109.20.
Plaintiff also seeks to recover payment for sixteen "pedestals" at a price of $2 each or a total of $32. Lanoux testified that these pedestals were ordered by the defendant's brother, Ed Milan, who acted in the capacity of defendant's superintendent during the course of the work. Ed Milan admitted that he ordered these pedestals, however, defendant refused to pay for them as he was of the opinion that they were "caps" as reflected in the original quotation. Plaintiff testified that a "cap" is a portion of concrete that encases the head of the pile. The purpose of the cap is to transfer the load of the beam to the pile. A "pedestal" is a base for the superstructure. They are not synonymous terms. The "cap" fits around and on top of the piling, the grade beam then fits on top of the cap and the pedestal fits on top of the grade beam, which is apparently admitted by defendant.
Our analysis of the complicated record causes us to understand that plaintiff is endeavoring to recover the following amounts for labor and materials furnished in connection with the contract and for extra work performed incidental thereto.

"For driving 62 pilings as called
 for in original quotation 527.00
 For driving 5 additional pilings
 as extras 42.50

*353
For laying 319 feet of grade beam
(265 ft. @ 2.10 a foot as called
for in original quotation and 54
additional feet at 2.10 a foot as
required by the plans) 669.90
For 52 feet of grade beam for
porch as extras 109.20
For 16 pedestals 32.00
 ________
 1380.60"

Plaintiff concedes that defendant is entitled to a credit of $48 for material used and furnished by defendant. While he sued for $1,414.20 subject to a credit of $48, he now admits that he has only proved that he is entitled to $1,380.60, subject to a credit of $48, or the sum of $1,332.60, the amount he desires to recover in his answer to the appeal.
Defendant insists that he owes plaintiff nothing because plaintiff did not substantially perform the building contract, in that the concrete used in the grade beam did not test 2500 pounds per square inch and, therefore, failed to measure up to the specifications and, in addition, that plaintiff owes him damages of $80 for correcting an error in the level of the grade beam and $190 (he originally claimed $200) expended by him in strengthening the foundation; in the alternative, defendant asserts that even if plaintiff's performance was a substantial compliance with the contract, there is no doubt that plaintiff's work was not an actual compliance therewith and, therefore, defendant is entitled to recover damages which he suffered as a result thereof or the sum of $270; and, in any event, according to defendant's calculations plaintiff's recovery should be limited to the sum of $917.20 or $139 less than the amount awarded by the lower court.
A careful analysis of the pleadings, the lay and expert testimony contained in the record and the briefs of respective counsel reveals that the only factually scientific point of issue in the case relates to the strength of the concrete poured by plaintiff. It is very difficult for us as laymen to comprehend and satisfactorily digest the expert dissertation on the relative strength of the concrete and this fact is emphatically pointed up by virtue of the following interrogation of Cecil M. Shilstone, a partner of Shilstone Testing Laboratories and the response thereto:
"Q. Do you do a lot of concrete testing? A. Considerable.
"Q. Mr. Shilstone, will you tell the Court something about the behavior of concrete after it is poured, something about the relationship between age and strength of concrete? A. You will have to understand, that question could be answered in a series of lectures which would last probably a month * * *."
In view of the foregoing answer, Shilstone's expert dissertation on the subject of concrete was relatively short, however, we shall endeavor to elucidate thereupon as informatively and briefly as possible.
He related that when 2500 pounds per square inch concrete is required by the specifications, that means the concrete should test 2500 pounds per square inch on the 28th day after the pouring of the concrete. The grade beam was poured on July 23, 1951. Thereafter two tests were made of the concrete used in the grade beam. A test was made by Shilstone Laboratories on September 14, 1951, and that concrete tested 1431 pounds. It appears that a legitimate dispute arose over this test because plaintiff insist that the sample was taken in an improper container, a porous one, and defendant while admitting that the sample should not have been placed in a porous container, contends that this error was rectified by virtue of placing the porous container in moistened and shaded sand. The second test was made by Shilstone Laboratories on March 1, 1952 of a core taken from the grade beam itself. This was approximately six months after the date on which the concrete should have tested 2500 pounds, that is, August 20, 1951, the 28th day after the pouring of the concrete. This core tested 2567 pounds.
Shilstone testified that concrete hardens from the 28th day after the pouring some *354 15% in eight or nine months, but that it is possible the core could have hardened less than 15%; that 15% of 2500 pounds is 375 pounds and that, therefore, according to his estimation the grade beam had tested 2125 pounds per square inch on the 28th day after the pouring of the concrete. Later he asserted that the grade beam tested approximately 2000 pounds per square inch after the pour.
Plaintiff, on the other hand, insists that the concrete tested 2232 pounds per square inch on the 28th day after the pouring and predicates various mathematical computations upon Shilstone's testimony to sustain that conclusion.
We have carefully considered all of the testimony, and, in the last analysis, it is our opinion that the plaintiff failed to substantially comply with the contract.
We have reached this conclusion for the reason that the concrete, on the 28th day after the pouring, did not even approximate 2500 pounds per square inch, and when defendant discovered this fact there was nothing the plaintiff or anyone else could do with the concrete to bring it up to the specified strength. Ordinarily, when a contractor fails to comply in detail with his contract but does, in substance, comply therewith, the owner must pay the contract price less such amount as he may necessarily expend to effect the completion thereof.
However, when the contractual work fails to measure up to the specifications of the contract and nothing can effectually remedy the existing condition and the owner is forced thereby to make alterations in his plans in order to acquire a useable structure, he is not obligated to settle with the contractor in conformity with the doctrine of "substantial compliance", unless he desires to use whatever the contractor has created. To elucidate, in such a situation the owner may say to the contractor that nothing that he may do will produce the building which was contemplated in the plans, and that, therefore, the contractor will be required to entirely remove what he has erected. On the other hand, the owner may say (or so act) to the contractor that what he had erected is not the structure which was designed, but that, the owner, nevertheless, by effecting changes in his plans, can use what the builder has constructed. If he decides to follow this alternative, he is liable to the contractor for what has been erected, less the amount it may cost him to secure a useable building, even though the construction is not such as was contemplated by the plans. We are of the opinion that this is exactly what the owner, Milan, did here and since he saw fit to use what the plaintiff had erected and did not demand its removal, he should pay for that work, less, of course, what he was required to expend as a result of the modification of the plan.
The damage for the breach of a building contract where the owner derives some benefit from the defective construction is usually the cost of repairing the defective work. DuBos v. Sanders, 174 La. 27, 139 So. 651; Merrill v. Harang, La. App., 198 So. 386; Sarver v. Barksdale, La.App. 24 So.2d 649; Home Services v. Marvin, La.App., 37 So.2d 413; Banks v. Reed, La.App., 52 So.2d 554; Moore v. Usrey & Usrey, La.App., 52 So.2d 551.
There is no doubt that defendant derived benefit from the defective construction in view of the fact that he erected his residence upon this foundation, however, he expended the sum of $270 to effect the correction of the defective construction.
Defendant disputes the validity of plaintiff's charge for the following items:

16 pedestals 32.00
54 feet of grade beam at
2.10 per foot or 113.40

Defendant's brother, Ed Milan, admitted that he ordered these pedestals from plaintiff and our examination of the record shows that the only reason why defendant refused to pay for them was because he was of the opinion that they were caps as reflected in plaintiff's original quotation, *355 however, we conclude that pedestals and caps are not synonymous as defendant believed, and that the sixteen pedestals were actually used in conjunction with the construction work.
Relative to the 54 feet of additional grade beam defendant admitted that plaintiff laid approximately 320 feet of grade beam and that he accepted plaintiff's bid without rechecking the plans to determine whether the measurements set forth in plaintiff's quotation (265 feet) coincided with those in the plans (319 feet). As related heretofore plaintiff explained that the quotation was simply an honest mistake which defendant should not be permitted to take advantage of unjustly. There is no doubt that plaintiff's quotation was based on the use of 265 feet of grade beam whereas he laid 319 feet in conformity with the plans and specifications and we are of the opinion that plaintiff is entitled to recover the value thereof.
Accordingly, plaintiff is entitled to recover the sum of $1,332.60 and defendant is entitled to the cost of repairing the defective construction$270.
The trial judge awarded plaintiff a judgment in the amount of $1,056.20. We are unable to reconcile this figure with the net figure of $1,062.60 which we believe plaintiff is entitled to recover.
For the reasons assigned the judgment appealed from is amended by increasing the amount thereof from $1,056.20 to $1,062.60 and as thus amended, it is affirmed.
Amended and affirmed.