83 So.2d 488 (1955)
Grover C. NORMAN, Plaintiff-Appellee,
v.
Malone BROWN, Defendant-Appellant.
No. 8405.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
*489 Bethard & Bethard, Coushatta, for appellant.
George T. Anderson, Jr., Coushatta, for appellee.
GLADNEY, Judge.
Grover C. Norman entered into a written agreement with Malone Brown to construct for the latter a house according to *490 certain plans and specifications. After completion of the house, this suit was instituted for the net sum of $845.80, of which $400 represented an unpaid balance on the contract, and the remainder for alleged extra work. Plaintiff's suit was defended by Brown, who, in turn, claimed by way of reconvention the sum of $3,501.50 for alleged defects of construction. After trial, judgment was rendered in favor of plaintiff for $845.80 and, in defendant's favor on the reconventional demand for $212. Aggrieved by the judgment so rendered, defendant has appealed to this court.
In our jurisprudence it is well settled that where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is nonetheless entitled to recover at the contract price if the owner fails to establish damages sustained by reason of the contractor's partial default. The remedy of the owner in such case is for a reduction in the price to an amount necessary to complete the work in accordance with the terms of the contract. Thus, it was said in Cairy v. Randolph, 1851, 6 La.Ann. 202:
"But under the uniform jurisprudence of this court, a suit may be maintained upon a building contract, although the work be defective or unfinished, and the remedy of the defendant in such a case is for a reduction of the price agreed upon to the extent of the damages sustained by reason of the defective performance."
See also: Lillis v. Anderson, La.App. 1945, 21 So.2d 389 and LSA-C.C. arts. 1930, 2769.
Damages for the breach of a building contract where the owner derives some benefit from the defective construction are usually measured by the cost of repairing the defective work. See: Du Bos v. Sanders, 1932, 174 La. 27, 139 So. 651; Merrill v. Harang, La.App.1940, 198 So. 386; Sarver v. Barksdale, La.App. 1946, 24 So.2d 649; Home Services v. Marvin, La.App.1948, 37 So.2d 413; Banks v. Reed, La.App.1951, 52 So.2d 554; Moore v. Usrey & Usrey, La.App.1951, 52 So.2d 551; Montague v. Milan, La.App.1953, 67 So.2d 351. The stated rulings are consistent with provisions in the Civil Code which expressly declare that if a contractor fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that result from his non-compliance. LSA-C.C. art. 2769. A substantial compliance with a building contract however, is all that is required. Merrill v. Harang, La.App.1940, 198 So. 386; Walter E. Canulette & Son v. Clesi, La. App.1949, 39 So.2d 853; Stabler v. Keaty, La.App.1949, 42 So.2d 909. With these legal principles in mind we move to consider the circumstances which gave rise to this controversy.
The defendant having decided to build a residence, obtained the plans and specifications of a building he wished to duplicate, and on or about March 1, 1953, he entered into a written contract with plaintiff for the construction of the house on the Ashland Road near Coushatta. The contract, as executed by the parties, reads:
"I agree to construct home for Malone Brown on Highway No. 9 as per plan attached and following specifications:
"1. All materials to be furnished by owner. All brick-work to be done by another contractor.
"2. Interior Wall FinishSheetrock, one coat textone and one coat Super Kemtone, or equal.
"3. Sand floors and apply 3 coats of varnish on all inside woodwork. Owner is to have all hard tile, brick and concrete work done by other contractor.
"4. Owner is to have all electrical and plumbing work done.
"5. Doors and windows and door casings and window casings, all cabinets, book cases & screens for windows *491 are to be factory assembled and will be installed by contractor.
"6. All labor and material for gas to be furnished by owner.
"7. Exterior Finish:Three coats of the desired kind of paint on all woodwork.
"8. Contractor to be paid $350.00 (Three Hundred Fifty Dollars) at the end of each week by owner until $3,000.00 (Three Thousand Dollars) has been paid. The balance of $400.00 (Four Hundred Dollars) will be paid on completion of building.
"Total contract $3,400.00 (Thirty Four Hundred Dollars).
 "G. C. Norman
 ---------------
 "Contractor
 "Malone Brown
 ---------------
 "Accepted"
Reference to the agreement discloses that Norman was to become the labor contractor with certain noted exceptions, and Brown was to furnish all materials. Generally speaking, the exceptions relieved Norman of furnishing any materials whatsoever, any brick, tile or concrete work, and all electrical and plumbing work. It was also specified that doors, windows, cabinets, bookcases and screens were to be factory assembled.
Further inspection of the agreement shows that it was not expertly drawn and that many conventional provisions are omitted therefrom. We note especially the omission of services of an architect or other expert to supervise and coordinate the work of the several contractors to the end that defects in construction attributable to one contractor would not affect the work of another. In attempting to evaluate performance under the contract, some consideration also must be given to the illness of Brown at the very commencement of the construction work. At this time Brown underwent surgery for the removal of a kidney stone which required his confinement in a hospital for three weeks, and an additional two weeks at his home. During this interim in order for the work to continue, Brown called upon Norman to assume certain obligations which were not actually imposed in the written contract. We recognize as a proven fact the defendant delegated a certain amount of authority to Ernest May Brown, but the record does not indicate the latter was able to give such attention to the work as should have been expected. All of these conditions perhaps contributed to some extent to the ill feeling which existed between the parties when the contract was completed August 31, 1953.
The defendant before this court does not seriously contest the award by the trial court in favor of plaintiff. It is contended, however, that the court, except to item 6, erred in failing to sustain its reconventional demand for all of the items listed below. The claim evidenced by item 6 was allowed by the trial court. The several items claimed are:

"1. To level floors which necessitates
 correcting foundation,
 placing termite
 shields $ 500.00
 2. To get sag out of the roof
 it is necessary to correct
 the foundation, but after
 the foundation is corrected
 additional bracing is
 required and the cost of
 this bracing alone $ 250.00
 3. Heading windows and doors
 as called for in specifications
 $1,000.00
 4. Resanding and resurfacing
 floors of house $ 120.00
 5. For realignment of break-fast
 room wall $ 100.00
 6. Sums paid for labor in placing
 tin work $ 212.00
 7. Extra materials purchased
 and labor paid because of
 error made in laying out
 foundation $ 75.00
 8. Cost of repairing 8 rooms
 of house $ 137.00"

*492 One of the more serious complaints by defendant charges that an error in the foundation led to the omission of four piers and the improper placement of others and this failure to follow plans and specifications caused a sag in the roof and the floors to be uneven. The evidence unquestionably shows there is a noticeable sag in the roof. Charles S. Barr, an architect from Shreveport, however, attributed the sag largely to improper bracing which condition he stated should not be remedied until after the foundations have been corrected. The record does not enable us to determine whether the alleged unlevel condition of the floors is of a serious nature, nor if such a condition, if existent, is due to the omission and misplacement of the piers. In answer to these complaints, the contractor points out that the written agreement expressly provides all brick and concrete work was to be done by other contractors, and consequently he had no obligation to do the foundation work. Therefore, he argues, he cannot be charged with resulting damages. Such work was actually performed by another contractor, Robert Persley, who acknowledged responsibility for the error. Norman, however, admitted that he assumed responsibility for the staking off of the foundation which he says was done as an accommodation to Brown when the latter told him the person engaged by Brown to lay off the foundations did not show up. The error in the foundation was not discovered by Norman until after he had laid his flooring. Thereupon additional, but insufficient foundation work, was done.
A further controversy is over the responsibility for ordering and using warped and crooked 2 × 4's which appear to have caused certain interior walls to be out of plumb. The contract places responsibility for securing all materials on Brown, but the latter testified that while he was incapacitated he authorized Norman to order carte blanche all material needed. The latter admits ordering some materials but denies he was responsible for any of the bad lumber. Norman and several of his workmen testified that many of the 2 × 4's were so crooked that in order to be of use it was necessary to splice them. After weighing the evidence, we opine the contractor should not be held for damages caused by defective lumber.
We now turn to consider the items, in seriatim, for which defendant claims damages. The first item is for unlevel floors and for the installation of termite shields which were omitted. Norman admits that the termite shields were not inserted as called for by the plans but declares that this was done upon authority from Brown. Certain of Norman's employees testified that termite shields were never delivered to the building site, and to this extent such testimony is corroborative of that of Norman. Brown does not remember giving this authorization. The evidence as to the floors not being level is unsatisfactory. Such testimony only was given by Brown, and is contradicted. Even if such defective conditions do exist, testimony as to the cost of correction is not satisfactory. We think this item should be disallowed.
That there is a definite sag in the roof does not admit of doubt. It was caused, so Mr. Barr testified, by the omission and misplacement of piers and improper bracing. As we understand the contract Norman should not be required to correct the foundation, and, therefore, we think to the extent this claim is based thereon, it should be denied. There is, however, adequate evidence to support a requirement for additional bracing, which item Barr testified could be corrected at a cost of $250. The witness admitted, however, that his estimate was based on the prevailing wage scale of union labor in Shreveport which is approximately twice that of the cost of Norman's labor. For this item we think plaintiff in reconvention is entitled to $125.
The sum of $1,000 is claimed for improperly heading windows and doors. *493 Brown testified that two of the 2 × 4's were omitted from each heading. The specifications call for the use of three 2 × 4's, one of which should be laid flat and the other two edgewise. Norman testified he acted exactly in accordance with the plans and specifications and challenged the defendant to inspect such headings by removing covering material. Barr testified that he believed the heading was improperly done, stating he reached this conclusion after testing by means of a hammer. He did not actually expose any one heading. The positive testimony of Norman, so we think, should prevail over the inconclusive test used by Mr. Barr. Accordingly, we disallow this claim.
There was conflicting testimony as to the necessity of resanding the floors. The preponderance of the testimony, so it seems to us, is that it was not a firstclass job. One of defendant's expert witnesses, however, Mr. Sneed, considered the work satisfactory. The exact cost of reconditioning such work is not established. We disallow this item.
Item 5 represents a claim for realignment of the breakfast room wall. It is doubtful whether the pleadings have included this claim, but conceding that it is properly presented, we find proof as to actual damages sustained thereby inadequate and for this reason it should be rejected.
Item 6 representing wages paid for labor and placing of tin work seems proper. Counsel for appellee asserts that Norman had an agreement with Brown, in which the latter agreed to furnish the labor therefor. Such an oral agreement is inconsistent with Norman's obligation under the contract. Brown does not recall any such agreement. The judge a quo decided the matter in favor of Brown, and we think correctly so.
As previously stated, it is our conclusion that none of the foundation work was the responsibility of Norman and, because of this, the claim for extra materials because of an alleged error made in laying out the foundation cannot be approved.
The last item, the cost of repainting eight rooms, for which materials only are claimed, should, we think, be rejected. Much of the testimony relating to this item is conflicting. Plaintiff's witnesses say that Brown insisted upon using a certain oil base paint without a prime or filler. Such testimony is not fully refuted. Defendant seems to take the position Norman, even though instructed by Brown, should not have used the oil base paint on sheet rock without a filler. At least part of the confusion must be attributed to lack of clarity in the contract, and the tendency of both the owner and contractor to alter the specifications found therein. The defendant has not established this item of damages by a preponderance of the evidence.
Counsel for appellee argues defendant waived any right to damages for defects of construction due to the workmanship of plaintiff by accepting said contract when he moved into the house several days prior to its completion. We find no merit in this contention. There was considerable ill feeling between the parties at the time Brown moved into the home. Before he did so Norman had advised Brown that he and his men were quitting the job because of abuse and criticism. That there was no actual waiver of his claims is evident from Brown's failure to pay the balance due on the contract. The Supreme Court in Michel v. Efferson, 1953, 223 La. 136, 65 So.2d 115, 119, observed when confronted with a somewhat analogous situation:
"The defense of waiver is a special one and the burden of proof is on the defendants to show that the plaintiff had knowledge of the defects in construction and that she intentionally waived same.
"The courts of this state have held that an owner is not estopped from *494 claiming damages for the breach of a building contract by taking possession and moving into the building. The failure of the contractor to construct the building in accordance with the plans and specifications was a violation of the contract and the taking of possession of the premises by the plaintiff can not be considered as a discharge of the defendant's liability. * * *
"Waiver involves both knowledge and intention and it follows that ignorance of a material fact negatives waiver. Waiver can result only from the intentional relinquishment of a known right."
We are convinced that it was not the intention of Brown to waive or relinquish any of his rights or claims against Norman for defective workmanship by moving into the home before its completion.
In rejecting claims in defendant's reconventional demand denominated items 1, 3, 4, 5, 7 and 8, our conclusions are consistent with those arrived at by the judge a quo, who was in a better position than this court to pass upon such factual issues. We are also in agreement with his decision on item 6, which allowed plaintiff's claim for labor in connection with the tin work. We think, however, the judgment should be amended by recognizing the validity of defendant's claim for improper bracing of the roof. As hereinabove stated the sum of $125 should be allowed for damages claimed under item 2.
For the reasons given, the judgment from which appealed should be and is hereby amended by allowing defendant-appellant the additional sum of One Hundred Twenty-Five ($125.00) Dollars. In all other respects the judgment, as amended, is affirmed. All costs, including cost of this appeal, shall be equally divided between the parties.