GLADNEY, Judge.
The Standard Tile & Marble Company, a partnership composed of P. G. Coleman and T. M. Rayburn, brought this suit against W. A. Gray to recover $357.35, the unpaid balance of the contract price. From a judgment for $178.67 in favor of pláin-tiff, the defendant has appealed. H. E. Harper, qualified trustee in bankruptcy for Standard Tile & Marble Company, (Coleman and Rayburn bankrupts), has been properly substituted party plaintiff.
Plaintiff agreed on October 1, 1954, to do the terrazzo and ceramic work in the South-side Branch of the Pioneer Bank & Trust Company of Shreveport, for the sum of $3,573.50, in accordance with plans and specifications prepared by Lester Haas, who was the supervising architect on the job. The written contract entered into consisted of proposals made on behalf of Standard Tile & ■ Marble Company and acceptances by W. A. Gray. In none of these does it appear that Gray acted as other than a principal. He appears in the light of a general contractor, and plaintiff as a subcontractor.
Following completion of the work and payment by W. A. Gray to plaintiff of all of the contract price with the exception of ten per cent thereof, which was retained in the hands of the owner, this controversy arose because of the unsatisfactory condition of the work. During the trial of the case the two partners, W. A.-Gray, E. P. Crutcher, E. R. Campbell, (the latter two representing the Pioneer Bank & Trust Company), and architect Lester Haas testified. The judge a quo made an inspection of the work in question and his report is likewise found in the record. All of this testimony may be summed up by stating the tile work was finished with certain defects which on several different occasions plaintiff attempted to remedy but never did *358 completely do so to the satisfaction of Gray or the Pioneer Bank & Trust 'Company.
In the course of his inspection the trial judge observed conditions he apparently considered unsatisfactory and while the architect was a witness he pressed Mr. Haas to say what it would cost to substantially remedy those conditions. The Court was finally informed by this witness that approximately five per cent of the total contract price, or $178.67, would be a fair, measure of the damages and it was this sum which determined the award.
The' defendant alone has appealed and presents the following errors in the judgment: (1) The court was in error in holding defendant to a personal judgment as the evidence disclosed that Gray, was merely the agent of the disclosed owner, the Pioneer Bank & Trust Company; (2) that the court was in error in failing to find the cost of correcting the unsatisfactory work exceeds the amount withheld; and (3) that the judgment is in error in requiring defendant to pay over the balance due under the contract before the faults are corrected.
' Certain general principles with reference to recovery on a building contract where the work is defective or unfinished, should be borne in mind. Recently in the case of Norman v. Brown, 1955, 83 So.2d 488, 490, a decision of this court, we observed:
“Damages for the breach of a build'ing contract where the owner derives some benefit from the defective construction are usually measured by the cost of repairing the defectivé work. See: DuBos v. Sanders, 1932, 174 La. 27, 139 So. 651; Merrill v. Harang, La.App.1940, 198 So. 386; Sarver v. Barksdale, La.App.1946, 24 So.2d 649; Home Services v. Marvin, La.App. 1948, 37 So.2d 413; Banks v. Reed, La.App.1951, 52 So.2d 554; Moore v. Usrey & Usrey, La.App.1951, 52 So.2d 551; Montague v. Milan, La.App. 1953, 67 So.2d 351. The stated rulings are consistent with provisions in the Civil Code which expressly - de-, clare that if a contractor fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that result from his noncompliance. LSA-C.C art. 2769. A substantial compliance with a building contract however, is all that is required. Merrill v. Harang, La.App. 1940, 198 So. 386; Walter E. Canulette & Son v. Clesi, La.App.1949, 39 So.2d 853; Stabler v. Keaty, La.App.1949, 42 So.2d 909. With these legal principles in mind we move to consider the circumstances which gave rise to this controversy.”
In brief before this court, counsel for defendant insists that Gray undertook the work on behalf of the Pioneer Bank & Trust Company as its agent only. The only evidence adduced in support of this contention is the testimony of Gray, who gave this account of his contract with the bank:
“Well, in this particular case, the ’way this contract was run out there, I had a contract with the Pioneer Bank & Trust Company to build this building on a percentage fee, cost-plus, in other words, and Mr. Campbell would pay any invoice that I okayed, speaking of all invoices. But he told me that the work was not satisfactory to him, and it wasn’t satisfactory to me, and I would never okay the final hold-back, you see. We paid all but ten per cent of this. We withheld ten per cent. I believe we made two partial payments. I am not sure. It might have been one.”
This evidence, standing by itself, is certainly insufficient to indicate that Gray was an agent or 'employee. The proposals and acceptance, both in writing, and filed as exhibits in the record, make no disclosure of any relationship whatsoever between Gray and the bank, other than that the job. was being done for the Pioneer Bank & Trust Company.
*359 Article 1945 of the LSA-Civil Code declares that legal agreements having the- effect of law upon the parties can only be abrogated or modified by them and that the intent of the parties is to be determined by the words of the contract “when these are clear and explicit and lead to no absurd consequences.” The record and the exhibits referred to, give no -indication that Gray was an agent or employee of the bank.
The legal assertion that an unqualified cost-plus contract constitutes an agency is non sequitur. The Supreme Court in Standard Oil Company of Louisiana v. Fontenot, 1941, 198 La. 644, 4 So.2d 634-643, had occasion to discuss whether cost-plus contracts have the effect of creating an agency or independent contract and said:
“The question of whether or not a contractor under the. law is an independent one or an agent depends upon the intention of the parties as expressed in the contract. The usual independent contractor is the one who is the lowest bidder on a lump-sum basis. He depends for his profit or gain upon the difference between the amount that the materials, labor, etc., cost him and the amount of the contract price. The independent contractor on a ‘cost-plus-a-percentage-of-cost’ basis is one who' undertakes the construction required by the contract and the owner reimburses him for the costs of materials, labor, etc., and the contractor’s profit or gain is to be a certain percentage of the total cost of the project. These types of contractors .are legally classified as independent contractors. The third or new type of contract is called a ‘cost-plus-a-fixed-fee’ contract, which means that the contractor is to be reimbursed for the costs of materials, labor; etc. by the owner and is to receive a fixed fee as his profit or gain. This fee, which is fixed as his profit or gain for the performance of the contract, is identical with the profit or gain which the contractor on a ‘cost-plus-a-percentage-of-the-cost’ contract receives in the respect that neither contractor takes any chance of losing. The profit or gain on a ‘cost-plus-a-fixed-fee’ contract is dissimilar from the profit or gain on a ‘cost-plus-a-percentage-of-the-cost’ contract only in the respect that the amount is not exactly determined in advance. The-only difference between the ‘cost-plus-a-fixed-fee’ and the ‘cost-plus-a-percentage-of-the-cost’ contract on the one hand, and a ‘lump-sum’ contract on the other, is that in the two former cases, the contractor’s profit or gain is assured, whereas, on a ‘lump-sum’ contract, it is possible that the anticipated and expected profit may turn into a loss because of a low bid or advances in the prices of materials or the cost of labor. In all three types of contracts, however, the contractor is certainly an independent contractor,- if the provisions of the contract make him so and do not in any way indicate or state that the parties intended that it was a contract of employment or agency or that the contractor was an instrumentality of the ’ Government. In all of the above cases, the contractor operates his business for his own profit and gain. He is not performing governmental functions and has no authority to, in any way, bind the owner or Government either for the purchase of the materials or for the hiring of labor.”
The foregoing explanation justifies the conclusion that Gray occupied neither the status of agent nor employee of the Pioneer Bank & Trust Company. Counsel cites but one Louisiana authority in support of his position, namely: Lagasse v. Allen, 1951, 219 La. 745, 54 So.2d 6. The cited case presented an action against the owner who, when sued for a balance due on the cost-plus contract, contended only that the contractor had completed the work in a manner more costly than was anticipated. It is not authority for the viewpoint posed herein.
*360 Appellant urges secondly, that the amount awarded defendant is grossly insufficient to correct the unsatisfactory condition of the work, and, therefore, the judgment should not have awarded anything to plaintiff. We find that the only evidence having probative value bearing upon the measure of damages comes from the testimony of the architect who estimated that five per cent of the total contract price would be adequate to correct the faulty work. This is purely a factual question which we think was properly decided by the trial court.
 Our attention is also directed to two other issues. First, we note counsel for appellee in brief only asks that the award be increased. No answer to the appeal has been filed, and in its absence the judgment cannot be disturbed. It is well settled that for an appellee to obtain a change in the judgment he must ask for it in a regular answer to the appeal. Code of Practice, art. 888; State v. Becker, 1878, 30 La.Ann. 682; Hughes v. Gill, La.App. 1949, 41 So.2d 536-539; Freeman v. World Insurance Company, La.App.1952, 61 So.2d 892.
The remaining question concerns the exclusion of all evidence relating to the reconventional demand made by defendant for an amount far in excess of the trial court’s jurisdiction. The judge a quo, in our opinion, correctly refused to give consideration to the reconventional demand. See: Louisiana Constitution of 1921, Article VII, § 51, LSA; LSA-Revised Statutes 13:1875, subd. B and 13:2450; Kaufman v. Mahen, 1925, 2 La.App. 354; Arctic Pure Ice Company v. Rathe, 1925, 3 La.App. 14.
It follows from the reasons and findings hereinabove set forth that the judgment from which appealed should be affirmed at appellant’s cost.