402 So.2d 771 (1981)
WALLACE C. DRENNAN, INC.
v.
Louis HAEUSER and National Lumber & Demolishing Co., Inc.
No. 11667.
Court of Appeal of Louisiana, Fourth Circuit.
July 21, 1981.
Rehearing Denied September 17, 1981.
Hammett, Leake & Hammett, Robert E. Leake, Jr., New Orleans, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Charles A. Boggs and Patrick J. Brown, New Orleans, for defendant-appellee.
Before SAMUEL, GULOTTA and CHEHARDY, JJ.
SAMUEL, Judge.
Wallace C. Drennan, Inc., (plaintiff) filed this suit against Louis Haeuser (defendant) [1] to recover $42,324.60 for sums allegedly *772 due in connection with contracts between them by which the former agreed to construct a private street and perform other paving services for defendant. Defendant answered, denying liability, and reconvened to recover $26,715 to remove and replace the allegedly improper concrete paving installed by plaintiff and for an additional $3,595.81 for items defendant alleges he provided plaintiff during the course of the work.
After an extensive trial on the merits, judgment was rendered, on the main demand, in favor of plaintiff in the amount of $18,200 and, on the reconventional demand, in favor of defendant in the amount of $27,323.66. Plaintiff has appealed.
Plaintiff and defendant contracted for the construction of a street in Jefferson Parish in accordance with detailed plans and specification prepared by defendant's engineers. The street was to be used to service small warehouses between Jefferson Highway and the Mississippi River, the project was constructed as a private road leading from Jefferson Highway, and it has remained a private road to the time of trial.
The original contract price was $29,821, all of which was paid prior to suit except a retainage of $2,982.10. The parties later orally agreed plaintiff would construct a concrete apron between the street and defendant's warehouses, for which plaintiff billed defendant $27,337.50, based on a price of $11 per square yard. Defendant contends the oral agreement between them established a price of $7 per square yard. The remainder of the dispute between the litigants, other than the alleged improper construction of the street, involves extras and miscellaneous items.
While the trial judge did not assign written reasons, it is clear the judgment in favor of plaintiff represents payment to it for paving the parking apron at the rate of $7 per square yard for 2,600 square yards. The judgment in favor of defendant on his reconventional demand is for $26,715 for repairs and corrections to the street, subject to a credit of $2,982.10 for retainage admittedly due under the contract, plus payment to defendant for $3,600.76 for extras paid for by him.
For simplicity, we first discuss plaintiff's claim for additional sums for paving the parking apron, then defendant's claim for cost of repairing the street, and finally miscellaneous claims by plaintiff for extras and by defendant for sums allegedly expended by him during the course of the work.
First, the parking apron between the street and the warehouses was laid in a manner completely different from the laying of the street, and there is no question with regard to workmanship or defects in the parking apron. The only question regarding the parking apron is one of price.
As has been said, the agreement for laying the parking apron was verbal. Defendant testified he agreed to pay at the rate of $7 per square yard, and plaintiff's president, Drennan, testified the appropriate price was $11 per square yard on a "cost-plus" basis. Plaintiff was aware defendant was dissatisfied with its work on the street, and it did not send a bill for the parking apron until 8½ months after completion. When it sent the bill, it was in the form of a lump sum summary, which read as follows:
"For excavation, hauling and paving with 6" reinforced concrete all the area adjacent to new street as per your instructions and directions $27,337.53."
Thus, the bill did not indicate the amount of area paved, the price per square yard, the cost of materials, or any other items ordinarily contained in a cost-plus contract.
One suing on an oral contract is obliged under the law to prove the existence and terms of the contract with legal certainty and by a preponderance of the evidence.[2] Other than the testimony of *773 plaintiff's president, plaintiff did not produce any witnesses to verify its $11 per square yard charge. It likewise did not produce any documentation to verify or substantiate the $11 charge, even though the contract was ostensibly to be charged on a "cost-plus" basis. The only substantiation offered by plaintiff for the $11 per square yard price was other bids obtained by defendant for the construction of the street. This evidence, however, is not particularly strong. The street was excavated and filled with sand, and the apron was not. The street is 8" thick, while the apron is only 6" thick.[3] The street has curbs on both sides, while the apron has none. Provisions had to be made for water and sewer lines, manholes, and similar facilities under the street, while no such provisions were necessary for the apron paving.
In contrast, defendant testified he paved an area in front of his warehouse within 18 months of plaintiff's job for $4.83 per square yard. This price was substantiated by bills from two other paving contractors and the testimony of Jeffrey Nolan, an engineer and president of Nolan Contracting, Inc., who had previously performed street paving. Nolan testified he could have performed the apron work for $7.12 per square yard, for a total cost of $18,141.76. In addition, defendant produced the testimony of Carl Calamia, who had been in the concrete construction business for approximately 26 years. Calamia testified he could have paved the apron for $6.93 per square yard, or a total cost of $17,627.64.
We conclude the evidence in the record is such that the trial judge did not abuse his discretion in his obvious factual finding that the parties agreed to pave the concrete parking apron for the price of $7 per square yard. The trial judge is afforded wide discretion under Louisiana law in his findings, particularly when credibility is involved, and this court will not substitute its judgment for that of the trial court in the absence of manifest error.[4] We find no such error here and consequently affirm the trial judge's award of $18,200 to the plaintiff.
The second issue for our determination is the validity of the trial court's award of $26,715 to defendant on his reconventional demand for removal and replacement of many of the slabs which form the concrete street laid by plaintiff. The figure of $26,715 was established as of December, 1977 by Jeffrey Nolan, mentioned above. His estimate and testimony were not contradicted by plaintiff.
Plaintiff admits in brief "... that the street paving was less than a good job." It agrees the finish is uneven in places, crown ordinates (i. e., the parabolic shaping of the street form center line to curb) are irregular, gutter bottoms are uneven in places, some joints were poorly installed, and there are several cracks in the street, with some spalling of concrete at joints and curbs. Nevertheless, plaintiff contends the street is still fully usable for its intended purpose, has no structural failures, and has been used by defendant for the intended purpose in excess of five years.
Defendant presented the testimony of William Cloutet and Joseph Krebs, both experts in the field of engineering. Cloutet, a graduate civil engineer, has been employed continuously in the field of civil engineering since his graduation in 1954 and has designed streets on regular occasions. He was the project engineer for the street designed for defendant, and was quite familiar with both the plans as drawn and the work as actually performed. Cloutet's testimony sets forth in factual terms the poor workmanship exercised by plaintiff in laying the street.
*774 Cloutet testified that of 28 "panels" which comprise the street only 6 were acceptable. The remaining slabs had to be removed and replaced for numerous reasons, including at least 6 structural cracks going through the 8 inches of concrete, improper joints, improper crown ordinates, spalling, uneven joints, and a lack of transverse joints in slab no. 28 which abutted Jefferson Highway. Defects in the curb and gutter resulted in improper drainage and "bird baths", and the street in general was in a deteriorating condition.
The testimony of Joseph Krebs, also a long practicing civil engineer, established 5 slabs were acceptable, 3 slabs were marginally acceptable, a quarter panel must be removed in 3 slabs, and the remaining 17 slabs had to be removed and replaced in their entirety.
The testimony of Cloutet and Krebs details at great length improper joints, broken curbings, "bird baths" or indentations which accumulate water, and failing epoxy patches in 17 slabs. They also testified these defects would not exist in a 5 year old street in the absence of improper workmanship.
Louisiana law provides that a contractor who has substantially performed the work is entitled to be paid therefor, subject to deduction for the reasonable cost of repair of any deficiencies proved by the owner or the reasonable diminution in value of the work caused by any partial failure of performance.[5] Stated in other terms, when there is substantial performance but the work fails to meet the specifications of the contract, the owner's damages are equal to the cost to remedy the defects or to do the work as required.[6]
Defendant presented the testimony of a personal friend, John Calhoun, also a civil engineer. Calhoun was accepted as an expert in engineering and contracting, but not as an expert in the field of concrete paving. His testimony regarding the adequacy of the street is somewhat suspect in view of the cursory examination given by him. He testified that on one occasion prior to trial he walked the street from the warehouses to Jefferson Highway and back. On the other occasion he could not remember whether he even removed himself from his automobile. He took no photographs, made no notes, drew no sketches, and spent between 30 and 45 minutes in making his inspections. No other practicing civil engineer testified on plaintiff's behalf.
Plaintiff also offered the testimony of Julian Wenn, a former employee of the Jefferson Parish Department of Roads and Bridges, who testified he had been involved in the contracting industry for 2 years. He visited the site on one occasion and estimated the street could be fixed for a sum between $3,000 and $5,000. However, he gave no breakdown as to the materials used, the qualities of material, or the labor needed. He also testified that with the $5,000 in repairs, the street would not be acceptable to the Parish of Jefferson for dedication as a public street which would then oblige the parish to maintain it. Basically, his testimony was that for $5,000 the street could be cosmetically repaired by filling structural cracks and spalling joints with epoxy, but he proposed no solution to the structural cracks.
Plaintiff also presented the testimony of Al Weathern, who stated the defects in the street could be rectified by epoxy patching. However, Weathern did not know the number of cracks, the number of defective expansion joints, the amount of epoxy needed to overlay the slab nearest Jefferson Highway, the number of spalling and broken curbs to be patched, or the number of "bird baths" to be repaired. Moreover, even if the epoxy was applied as he testified, he would only guarantee it for 1 year.
The evidence presented by defendant on his reconventional demand is quite strong *775 and constitutes proof of the necessary defects by a preponderance of the evidence. The evidence submitted on behalf of plaintiff clearly does not overcome that preponderance, and we affirm the finding by the trial judge that the sum of $26,715 was necessary for repairs to the street, subject to the $2,982.10 retainage admittedly owed plaintiff.
A similar finding must be reached with regard to the claim by defendant for extras furnished by him for the job. These extras total $3,600.76. They are composed of various items for sand, steel wire, concrete for drain boxes, flexcell joints, diesel fuel, cast iron fittings for water lines, truck driver labor, and use of a front-end loader. Invoices were introduced by defendant to substantiate some of these items, and other items were proved by defendant's testimony alone, since all time sheets used by defendant in his business are destroyed 2 or 3 years after their dates in the normal course of business. The trial judge was faced with the question of whether he chose to believe defendant's testimony. He obviously did, and nothing in the record indicates he committed error by so doing.
Plaintiff's claims for extra work are multiple. It seeks compensation for a valve manhole at the intersection of the private road and the highway, but defendant testified this item was part of the job and not an extra since a contractor should know a valve connected to pipes under a highway cannot be cemented over and must have a manhole for access. Second, plaintiff claims $525 for 3 extra 8 X 8 X 6 tees for future connection with plugs and blocking. Defendant admitted this was an extra item, but pointed out that tees are buried under the concrete apron poured by plaintiff, without being marked for future use. Consequently, when additional fire plugs are installed, defendant will be obliged to tear up a substantial portion of the concrete apron. We do not overrule the trial judge in his refusal of this item.
Next, plaintiff claims money for the addition of an 8" line to relocate a fire hydrant approximately 44 feet, a 6" line to relocate a fire hydrant 101 feet, a different type of fire hydrant, and a 6" line to tie in a sprinkler system. Defendant admitted that after the job was contracted he chose to move a fire hydrant from one side of the street to the other to allow for parking with less interference. The items in dispute cost $660, $1,500, $100, and $360 respectively. In our view, the trial judge erroneously refused to award the first 3 extras to plaintiff, and we so hold. However, plaintiff's invoice for a tie-in to a sprinkler system is not subject to an award, since the evidence indicates the hookup was performed by the installer of the sprinklers and not by plaintiff.
With regard to plaintiff's claim for sewer system work, defendant admits liability for $810 for an 8" cast iron sewer line crossing the new road and $150 for an extra 6" cast iron sewer for a connection to the warehouse nearest Jefferson Highway. Thus, these amounts should have been awarded plaintiff. However, plaintiff's claim for a sewer siphon and new manhole is disputed by defendant. We feel defendant is correct in contending the original contract placed the responsibility for causing sewerage to flow in accordance with plans and specifications directly on the plaintiff. It was plaintiff's responsibility to take whatever steps might be necessary to comply with the plans and specifications. Since this was its duty, it is not entitled to recover for the installation of a sewer siphon in order to have the sewerage drain correctly.
Plaintiff's brief is conflicting regarding its claim for $1,000 for extra hauling of excavated material. At one point, it seems to indicate abandonment of the claim for excavation hauling, but at other points in the brief it insists on an award of $1,000. The record indicates the contract called for an 18" excavation, and plaintiff was informed prior to execution of the contract that there were some concrete footings under the ground in the path of the proposed roadway. However, instead of using an air gun to cut off 18 inches of these concrete footings, Drennan chose to pull them out whole and transport them to his father's *776 property to use as rip-rap for his yard across the Mississippi River levee. The decision to haul these concrete footings, after they had been removed from the ground, was plaintiff's unilateral decision, and defendant should not be cast for their cost.[7]
Finally, plaintiff alleges the sum of $2,325 is due it as a result of "extra sand base". In the trial court Mr. Drennan admitted he did not purchase any sand for the job, and produced no invoices to prove that he did. Equally important, nowhere in the pleadings is there a claim by plaintiff for "extra sand" in the amount of $2,325, and we hold the trial judge correctly refused to award this item.
In conclusion, we find the judgment should be amended by additionally awarding plaintiff $660 for 44 feet of 8" pipe, $1,500 for 101 feet of 6" pipe to relocate a fire hydrant, $100 for the extra cost of a different fire hydrant, $810 for an 8" cast iron sewer line crossing the new roadway, and $150 for a 6" cast iron sewer to connect to defendant's warehouse near Jefferson Highway. These items total $3,220.
For the reasons assigned, the judgment appealed from is amended by increasing the award to plaintiff, Wallace D. Drennan, Inc., from $18,200 to $21,420. As thus amended, and in all other respects, the judgment appealed from is affirmed. Each party is to pay its own costs in this court.
AMENDED AND AFFIRMED.
NOTES
[1] National Lumber and Demolishing Company, Inc. also was a named defendant. However, prior to trial plaintiff stipulated the transactions in suit were between it and Haeuser personally, and that National Lumber was not a proper party defendant. Thereafter, the suit proceeded against Haeuser as the sole defendant.
[2] Chavers v. Kury Const. Co., La.App., 363 So.2d 950; Hoffpauir v. La-Cal Mud Specialties, Inc., La.App., 165 So.2d 65; Civil Code Art. 2277.
[3] On this item plaintiff offered evidence to indicate cost of reinforced 8" thick cement is the same as 6" thick cement with steel reinforcing.
[4] See Canter v. Koehring Company, La., 283 So.2d 716.
[5] Dickson v. Moran, La.App., 344 So.2d 102; Clark v. Whitener, La.App., 296 So.2d 393; Keating v. Miller, La.App., 292 So.2d 759; Cortiza v. Rosenblat, La.App., 291 So.2d 425.
[6] Du Bos v. Sanders, 174 La. 27, 139 So. 651; see also Kozlowski v. Fowler, La.App., 71 So.2d 246; Montague v. Milan, La.App., 67 So.2d 351.
[7] Plaintiff in brief likewise indicates he omits and abandons a demand for $5,000 for damages for defendant's interference with plaintiff's work at the job site. Since plaintiff did not brief the point, we consider this point in fact abandoned.